THE JOHN B. LYON.

HANSON *v.* THE JOHN B. LYON.

(*District Court, N. D. Illinois.* December 5, 1887.)

NEGLIGENCE—PERSONAL INJURIES—UNLASHING WHEEL—ACTING WITHOUT ORDERS.

Libelant, an experienced seaman, was placed to await orders in the wheel-house of a steam-barge which was being towed. He unlashed the wheel without orders, and as the rudder came into contact with an obstruction on the bottom, the wheel revolved and injured libellant who tried to hold it. *Held*, that he was guilty of contributory negligence.

In Admiralty. Libel for damages. On exceptions to commissioner's report.

*H. W. Magee*, for libelant.
*Schuyler & Kremer*, for respondent.

BLODGETT, J. This is a libel for personal damages claimed to have been sustained by libelant while employed upon the barge by reason of the negligence of the officers in charge. The material facts, as they appear in the pleadings and proofs, are as follows: At the close of navigation, in the year 1881, the Lyon was taken into Miller's dry-dock, on the North branch of the Chicago river, for some slight repairs; and, on the thirty-first of December of that year, these repairs being completed, the master desired to take her from the dry-dock to the Illinois Central slip, near the mouth of the river, for the purpose of there laying her up for the winter. She did not use her own machinery for the purpose of making a change of location, but two tugs were employed to tow her to the Illinois Central slip, and the captain, apparently by way of precaution, employed four men, one of whom was the libelant, to come on board the barge, and render such assistance in the change of berth as might be required. The libelant and another man were directed to go into the wheel-house, and wait there for orders, if it should become necessary to use her rudder for any purpose. At the time they so entered the wheel-house the wheel was lashed so as to hold the rudder straight with the keel. The tugs took hold of the stern of the barge, and backed her out of the dry-dock slip, swinging her stern down the river, to the mouth of what is known as the "Ogden Canal," when the stern of the barge was drawn into the canal so as to wind her at that point, so that she might proceed down the river bow foremost. In drawing the stern of the barge into this canal, the rudder struck upon some obstruction which caused the wheel to revolve violently, and libelant, in attempting to hold it, was thrown over the wheel, and his arm broken, and he was otherwise bruised and stunned, and it is for these injuries that the libelant claims to recover damages.

The claim is based upon two allegations of fact: (1) That the barge was so carelessly and improperly handled that her rudder was allowed to strike against the dock of the canal, whereby the wheel was caused to revolve and hurt the libelant. (2) That the master should have kept a proper lookout at the stern of the barge while she was going sternways into the canal, whose duty it was to give notice that her stern was about to strike the dock, and that, if such notice had been given to the master, it would have been his duty to give notice to the libelant to stand clear of the wheel; that no such lookout was kept, and no warning or notice was given to libelant that the stern was about to strike the dock.

The case was referred to Commissioner Proudfoot, under our admiralty rules, to take the testimony, and report his findings upon the matters in controversy in the case. The commissioner has taken voluminous proofs as to the manner in which the accident occurred, and reports, as the result of his examination of this proof, that the allegation that the barge's stern was allowed to strike the dock is not sustained by the

proof, but that, on the contrary, the stern did not strike the dock; and from the testimony in the case he concludes that the rudder struck the bottom of the canal, which was quite shallow at this point, or some sunken substance lying upon the bottom, and thus caused the violent revolution of the wheel. The commissioner also finds that the injury to libelant was in consequence of his own negligence in removing the lashings from the wheel, and standing in such proximity to the wheel as to expose himself to be thrown over it if the rudder should strike anything, and set the wheel in rapid motion. The commissioner, therefore, concludes that no case was made out by the proofs in support of the libel, and that the libel should be dismissed for want of equity. To these findings of the commissioner the libelant has excepted, and these exceptions have been fully argued before me.

I have examined very carefully the testimony in this case, and fully concur in the conclusions reported by the commissioner. It appears from the proof that libelant was an experienced seaman; that he knew that in moving a barge the size of the Lyon, she being something like 275 feet in length, about the crooked and narrow waters of the Chicago river, there was danger of her stern striking the dock, or any sunken obstacle in the bottom of the river, thereby putting the wheel in rapid motion; and it seems to me the commissioner is correct in his conclusions, when he says that the libelant should have known that such an occurrence was liable to happen, and should have stood sufficiently clear of or away from the wheel to have avoided being struck or injured by it. He knew that the barge was in tow of the tugs; that she was not proceeding by her own power; and that her navigation was substantially in charge of the tug-men. He had received no orders to take the lashings off the wheel, or to do anything with the wheel; and undoubtedly knew, or ought to have known, for he was an intelligent man, that he was only placed in the wheel-house to be called upon, in an emergency which might possibly happen, to do something with the wheel. Hence, as a prudent man, knowing the danger of the wheel being set in motion, and that he had nothing to do until he received an order from the captain except to stand where he could respond to such order, it was his duty to have kept the wheel lashed as he found it, until he was called upon to act, and common prudence, under the circumstances, required that he should stand clear of the wheel while he was in the wheel-house.

It is now further urged in behalf of the libelant that, even if he was negligent, and if the injury occurred without any negligence on the part of the officers of the barge, the libelant is entitled to be cured, or properly treated medically, at the expense of the ship. There is no dispute as to the rule which prevails that a seaman shipped for a voyage, who is taken sick, or who has received injury by accident, even where he is partly at fault, is entitled to medical treatment during the voyage, or until he is cured; but I do not think this libelant stood in such a relation to this barge as to be entitled to invoke this rule in his own behalf. This ship was not bound upon a voyage, within the meaning of the cases in which this rule has been applied, or of the circumstances out of which

the rule originated. The libelant did not ship for a voyage, but only for a temporary movement of the barge from one place in the harbor to another. It was not a case where it was expected to earn freight, or in any way engage in commerce. No shipping articles were signed; no special employment as seaman was given to the libelant. The barge, as the libelant must have known, was proceeding from one location in the harbor to another by the aid of tugs, and the main burden of handling the barge was upon the tugs. As a matter of special precaution, the captain secured the services of these few men, very few compared with those required for the navigation of such a craft if bound upon a voyage, and the libelant was directed to take his place in the wheel-house. This did not make him a seaman, or put him in such a relation to this vessel as to entitle him to all the rights of a seaman who had been duly shipped for a voyage. He was merely in the position of an employe rightfully on board of the vessel, and if while there he had been injured, by reason of the fault or negligence of the officers of the barge, he might have had his action either at law, or his libel in admiralty, to recover damages for such injury.

All the cases which have been cited, where the rule now invoked has been applied, are cases where the seamen was shipped for a voyage from one port to another, and where the sickness or injury for which he claimed to be treated was incurred while in the discharge of his duty under such engagement. They all agree that the obligation to "cure," as the old cases say, or to give "medical treatment," as the later cases term it, only continues to the end of the voyage. Here this man was employed to aid, we will say, in transferring this barge from a position on the North branch to the Illinois Central slip, a distance of less than two miles. Unless some unexpected delay intervened, it could not be expected to last more than an hour or an hour and a half, and at the end of that time, if you call it a voyage, the voyage would be over; so that, even in the event that this man had been entitled to this right, the right would be gone so very soon that it would be of very little value to him. I think, therefore, that no recovery can be had for damages to the libelant by reason of his rights as a seaman, under the rule referred to.

Much stress has been laid in the argument, and a large amount of testimony has been taken, for the purpose of showing that the libelant was inhumanly treated by the master of this barge after he was injured; and while I do not think that this testimony bears upon the question of the libelant's right to recover, at the same time it is but justice to all parties that I should allude to it. The facts, as they appear in reference to this feature of the case, are briefly these: Libelant was stunned by the injuries he received; was picked up and taken into the cabin, where the captain's wife administered restoratives and stimulants, bound up a cut on his head and his arm as well as she could, and apparently did all that a sympathetic and kind-hearted woman could do under the circumstances to hasten his recovery. After he had recovered, or partly so, from the stunning effects of the injury, he was asked by the captain if he wanted to go to the Marine Hospital, and he replied that he did; and when the

barge reached the Rush-street bridge, which is near the Illinois Central slip, where she was laid up, the libelant was helped ashore, and, in company with one of the men employed as he had been on the barge, was driven in an express wagon to the custom-house, for the purpose of obtaining his admission to the Marine Hospital. The examining surgeon not being present at his office in the custom-house, the libelant, at his own request, was taken to his own residence, which was on the North branch of the Chicago river, and near where the barge started from, and left there until some time in the afternoon, when he was taken back to the custom-house, and there put into an ambulance, and taken to the Marine Hospital. It was late in the afternoon when he arrived at the hospital, and the fracture of the arm was not reduced until the next morning. A day or two after libelant was received into the hospital the small-pox broke out there, and the hospital was quarantined for about eleven weeks, during which time libelant was not allowed to leave, nor his family allowed to visit him. At the end of eleven weeks he was discharged, and for some reason which is not explained, but certainly with which the respondent would seem to have had nothing whatever to do, the fracture in libelant's arm was not united, and for that matter no bony union has been accomplished as yet. Whether this failure to secure a union of this broken bone in a patient in apparently sound bodily health, addicted to no bad habits that would seem to have impeded the operation of healing, is attributable to some malpractice or neglect at the hospital, or to the libelant's own disregard of the proper orders of the surgeon, is not disclosed in the proof. There is certainly no evidence in the case showing, or tending to show, that the officers of this barge were in any way chargeable with the fact that this man remains uncured to this time. He had been a seaman for many years, in and out of this port; had paid his hospital dues, and knew that he was entitled to go to the hospital. He states in his own testimony that he did not know that he was to be taken to the hospital until he found himself there; but this is so flatly and completely contradicted and overturned by the other testimony in the case as not only to break the force of the statement, as far as this special fact is concerned, but to a considerable extent impair his general credibility as a witness in the case. There can, I think, be no doubt that he either requested directly that he should be taken to the hospital, or, on the suggestion that he go there being made, he intelligently and promptly assented to it. After he had been taken to his own residence from the custom-house, awaiting the return of the examining surgeon and the ambulance, he was under no obligation to have gone with the messenger when he came for him to take him in the ambulance, and must have gone there voluntarily; and from the testimony I have no doubt that he did know, and was capable of knowing, that he was going to the hospital, and that he went there voluntarily. It is unfortunate for this man, who, as far as the proof shows, was a worthy and industrious sailor, that he should have been so treated as to be left a cripple by reason of the simple fracture of an arm, which ought to have been cured, and the man as well as ever, by the opening of the next season's navigation.

But this, as I have already said, is not the fault of the respondent; but of either the libelant himself, or of the surgeon under whose charge he voluntarily placed himself. The exceptions to the commissioner's report are overruled, and the libel is therefore dismissed for want of equity.