## DE WALD v. BALTIMORE & O. R. CO.
### No. 3635.

Circuit Court of Appeals, Fourth Circuit.
June 11, 1934.

Joseph Loeffler, of Baltimore, Md. (Benjamin Unger and Harry E. Goertz, both of Baltimore, Md., on the brief), for appellant.

George W. P. Whip, of Baltimore, Md. (Allen S. Bowie, of Baltimore, Md., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

## NORTHCOTT, Circuit Judge.

This is a suit brought by the appellee, hereinafter referred to as the defendant, to set aside an award of the Deputy Commissioner of the United States Employees' Compensation Commission for the Fourth Compensation District, under the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 901 et seq.), and to enjoin the enforcement of said award.

On the 5th day of November, 1932, one George M. De Wald, who for fourteen years had been in the employment of the defendant (a self-insurer), was accidentally drowned. De Wald at the time of his death was working on three barges or scows, owned by the defendant, which were at the time afloat in the Patapsco river tied up at pier. The duties of the deceased, as found by the Deputy Commissioner from the evidence, were as follows:

"That in his employment as a bargeman, decedent's duties consisted of the checking and supervising the loading and unloading of cargo from barges to steamships and vice versa; seeing that the cargo was safely loaded and unloaded; making a record of all damaged freight; signing receipts for cargo loaded and unloaded; opening and closing hatches on barges and putting in gang-way boards; pumping water out of the barges, and making lines fast and unfast at docks or alongside vessels when the barges were moved about the harbor;

"That the deceased employee lived ashore; that he reported for work each morning at 8 o'clock to see whether he would be needed, but that he was not always given work, averaging about three days per week;

"That the barges on which the deceased was employed had no motive power, equipment or steering apparatus, being towed or pushed by tugboats; that their radius of operation was confined to Baltimore harbor; that when the barges were moved about the harbor and De Wald accompanied them on each such trip, which averaged one per day when working, he had duties to perform with respect to loading or unloading; that on such trips about the harbor De Wald was not responsible for the navigation of the barges and performed no duties in connection with such navigation except the incidental one of making lines fast and unfast, when tying up to dock or alongside vessel."

After a hearing the Deputy Commissioner made an award to Margaret De Wald, as widow of the deceased, in the amount allowed under the statute. On the hearing before the judge of the District Court of the United States for the District of Maryland, a final decree was entered setting aside the award of the Deputy Commissioner and permanently enjoining the enforcement of the same. From this action of the court below this appeal was brought.

The Longshoremen's and Harbor Workers' Compensation Act, 33 USCA § 903, provides, in part, as follows: "(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by state law. No compensation shall be payable in respect of the disability or death of—(1) a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net."

The judge below based his decision upon the conclusion reached by him that the widow of the deceased was not entitled to the award

because he was a member of a crew of a vessel. The sole point involved here is whether De Wald was such a member.

The act in question is undoubtedly remedial legislation and should, therefore, be liberally construed. Jarka Corporation v. Monahan (C. C. A.) 62 F.(2d) 588; Rothschild & Co., Inc., v. Marshall (C. C. A.) 44 F.(2d) 546.

For certain purposes De Wald comes under the category of a seaman. Ellis v. United States, 206 U. S. 246, 27 S. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589. But it does not follow that he was a seaman in the true sense of the word, one who engaged in voyages upon a ship or vessel and assisted in the navigation of the vessel and is exposed to the perils of the sea or in other words a seaman in the common acceptance of the meaning of the word.

Since stevedores have been declared, by the Supreme Court, to be seamen under certain conditions, their rights have been transferred to the Longshoremen's Act. As was said in Uravic, Administratrix, v. F. Jarka Co., 282 U. S. 234, 51 S. Ct. 111, 112, 75 L. Ed. 312: " * * * While the section 33 [46 USCA § 688] is construed to give the rights of seamen to stevedores, it does not say or mean that stevedores are to be regarded as seamen on the particular vessel upon which for the moment they happen to be at work."

The Longshoremen's and Harbor Workers' Compensation Act "was designed to accomplish the same general purpose as the Workmen's Compensation Laws of the state" and as such is constitutional (Crowell v. Benson, 285 U. S. 22, 52 S. Ct. 285, 288, 76 L. Ed. 598), and, while Congress has not, in the act, definitely classified those persons who are entitled to receive the benefits under it, it is hard to conceive of one who would come more definitely within the meaning of the words "harbor worker" than De Wald. His main duties, as found by the Deputy Commissioner, were the checking and supervising the loading and unloading of cargo from barges and keeping all records with regard to the cargo. Such work as he did in making fast lines at docks or alongside vessels and pumping water out of the barges was incidental to his main employment. He did not live upon the barge but went home every night. The barges were not navigated under their own power but were towed and never left the harbor.

It has been decided that a stevedore, while held a seaman under the Jones Act (41 Stat. 988), was not entitled to maintenance and cure as is one who is a seaman in the common acceptance of the term. Yaconi v. Brady & Gioe, 246 N. Y. 300, 158 N. E. 876; C. Flanagan & Sons, Inc., v. Carken (Tex. Civ. App.) 11 S.W.(2d) 392. In the case of The John B. Lyon (D. C.) 33 F. 184, it was held that an injured barge employee was not entitled to maintenance and cure. The right of maintenance and cure is inherent in the contract of employment of a seaman. Harden v. Gordon, 2 Mason, 541, Fed. Cas. No. 6,047.

After the Supreme Court in the case of International Stevedoring Company v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157, held that the Jones Act (46 USCA § 688) amended and modified the general maritime law and as so amended should apply to stevedores injured upon navigable water, Congress passed the Longshoremen's and Harbor Workers' Compensation Act and must have done so in the light of that decision, and it is our opinion that the act was intended, by Congress, to cover just such an employee as was De Wald. It is admitted by attorneys for the defendant that the purpose of Congress was to give stevedores a different right from that granted them by the decision in the Haverty Case.

In Wheeling Corrugating Company v. McManigal, 41 F.(2d) 593, this court sustained an award in the case of a carpenter foreman on a barge, and while the particular point here discussed was not raised in that case, the facts are very similar to those in the instant case.

In Norgueira v. New York, New Haven & Hartford R. Co., 281 U. S. 128, 50 S. Ct. 303, 74 L. Ed. 754, Mr. Chief Justice Hughes discusses the history of this and connected legislation, and the general intent of the Longshoremen's Act. He says, in part:

"The general scheme of the Longshoremen's and Harbor Workers' Compensation Act was to provide compensation to employees engaged in maritime employment, except as stated, for disability or death resulting from injury occurring upon the navigable waters of the United States where recovery through workmen's compensation proceedings might not validly be provided by state law. * * *

"Employers are thus defined in section 2, subdivision (4), 44 Stat. 1425 (U. S. C. tit. 33, § 902, 33 USCA § 902(4): 'The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable

waters of the United States (including any dry dock).' The term is not defined otherwise, with respect either to the nature or the scope of the enterprises in which the employer is engaged. The definition is manifestly broad enough to embrace a railroad company, provided it has employees who 'are employed in maritime employment, in whole or in part, upon the navigable waters of the United States.'

"The employees subject to the act are not defined affirmatively, but section 2, subdivision (3), Id., contains the following limitation: 'The term "employee" does not include a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.' * * *

"As the present case falls directly within the affirmative provisions of section 3 of the Longshoremen's and Harbor Workers' Compensation Act (33 USCA § 903), we look next to the cases specially excepted. Section 3, after the provision quoted above, continues:

" 'No compensation shall be payable in respect of the disability or death of—

" '(1) A master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net; or

" '(2) An officer or employee of the United States or any agency thereof, or of any state or foreign government, or of any political subdivision thereof.'

"The case of the petitioner does not come within any of these exceptions. Their limited character is significant. * * *

"When the bill which became the Longshoremen's and Harbor Workers' Compensation Act was pending in Congress, the importance of the policy of compensation acts, and their advantages in providing for appropriate compensation in the case of injury or death of employees without regard to the fault of the employer, were distinctly recognized. It appears that the bill originally excluded a master or members of a crew of a vessel, but was amended so as to extend to them the benefits of compensation. House Rep. No. 1767, 69th Cong., 2d Sess. As these seamen preferred to remain outside of the provisions of the bill, they were finally excluded and the bill was passed with the exceptions above quoted. Cong. Rec., 69th Cong., 2d Sess., vol. 68, pt. 5, p. 5908."

It is to us reasonably clear that Congress intended to except from the benefits of the Longshoremen's Act only those persons ordinarily and generally considered as seafaring men, at least only those employed on board a vessel having a master and crew. It is significant that Congress did not use the term "seaman" in section 3 of the act (33 USCA § 903). It would, undoubtedly, have used that term had it intended to exclude from the benefits of the act all those who have been held by the courts to be seamen in the more liberal interpretation of the term.

Obviously De Wald was not a master. The A. H. Chamberlain (D. C.) 206 F. 996. The judge below readily reached this conclusion. Nor in our opinion was he a member of a crew. He was the only man working on the barges in any capacity. "Crew" is a collective noun and signifies "the ship's company." The Marie (D. C.) 49 F. 286; Seneca Washed Gravel Corporation v. McManigal (C. C. A.) 65 F.(2d) 779; United States v. Winn, 28 Fed. Cas. 733, No. 16,740.

De Wald was not a member of the crew within the fair and common meaning of the words used in the excepting clause when we interpret the clause as one intended to restrict rather than extend and when we consider the purposes and history of the legislation as well as the nature of his duties and the use of the barges upon which he was, from time to time, employed by the day.

In Union Oil Company v. Pillsbury (C. C. A.) 63 F.(2d) 925, it was held that a night watchman was not a member of a crew of a vessel so as to be excluded from the act. A similar holding, as to one employed for the sole purpose of marking cross-ties on a barge, will be found in T. J. Moss Tie Company v. Tanner (C. C. A.) 44 F.(2d) 928.

Another question that presents itself is whether the barges upon which De Wald worked were, within the meaning of the act, vessels. Before the passage of the act scows and barges have been held by various courts to be vessels, but these decisions were not made in interpreting the intent of the Longshoremen's Act and in view of our conclusion that De Wald was not a member of a crew it is not necessary to decide this point.

For the reasons above given the decree of the court below is reversed.