### BRANER v. BROOKLYN EASTERN DISTRICT TERMINAL.

No. 2540.

District Court, E. D. New York.

July 22, 1942.

William M. Winans, of Brooklyn, N. Y. (William Paul Allen, of New York City, of counsel), for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne and John L. Quinlan, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

The plaintiff is the widow of Charles Braner and brings this action under Act of March 4, 1915, Chap. 153, § 20, 38 Stat. 1185, as amended by Act of June 5, 1920, Chap. 250, § 33, 41 Stat. 1007, 46 U. S.C.A. § 688.

The defendant operated and controlled the tugboat Invincible. The complaint alleges that the deceased was employed "as a seaman" on said tug Invincible, and that on July 20, 1941, while the tugboat was towing a float, also operated and controlled by the defendant, he met his death as a result of the negligence of the defendant in New York harbor.

The answer, among other defenses, alleges affirmatively that the decedent at the time of his death was in the employ of the defendant as a harbor worker and in one or more of the occupations enumerated in and subject to the Longshoremen's and Harbor Workers' Compensation Act, Title 33, §§ 901–950, U.S.C.A., and that the sole and exclusive remedy of the plaintiff is under the provisions of said Act.

This motion, therefore, is made for summary judgment on the ground that the action is not one which can be brought under the provisions of the Jones Act. The supporting affidavit of Brusich, master of the tugboat, recites that at the time of the death of Braner the tugboat was operated by the defendant, though owned by Havemeyer & Elder, Inc.; that by the certificate of inspection the Invincible was licensed to navigate in the harbor of New York, inside Rockaway Point and Sandy Hook Lighthouse to Eaton's Point and Peck's Ledge and tributaries thereto; and that the tug was required to carry a crew of five men, consisting of a master and pilot, two deck-hands, one chief engineer and one fireman, and was permitted to carry in its crew "one person when needed in steward's and other departments not connected with the navigation of the vessel." Charles Braner was not a member of the crew of the Invincible at the time of his death.

The affidavit recites that the defendant operates a fleet of carfloats in the harbor of New York and that on July 20, 1941, Braner was engaged in moving these carfloats about the harbor and that it was the practice for a float-man to accompany the carfloat or carfloats in tow. The affidavit further recites that at the time of his death Braner was in the employ of the defendant; for four nights of each week he acted as float-man; two nights of each week he stayed ashore and worked as bridge-man at the terminal, and the other night of each week he was off duty. He never had meals aboard the Invincible nor slept thereon. The affidavit further recites that when Braner acted as float-man he was in complete charge of the carfloats; that his duties thereon were to check and see that the brakes on the railroad cars were properly set; that the wheels were securely chocked and the chains fastened to the draw-heads. He was required to check the cars and keep a record of the car numbers. It was his duty to examine the carfloat and the railroad cars for damage, and what water was in the bilge, and see if all the lines and skids required to be aboard were aboard, and to note their condition. It was his duty to put lights around the carfloat and to see that these lights remained while the float was in tow. He was charged with the duty of keeping the lights clean and filled with oil. He handled the lines in response to the master's orders, but was otherwise in complete charge of and responsible for the carfloat or carfloats. No member of the crew of the Invincible was charged with or performed any of these duties. On the other hand, Braner had no duties with respect to the Invincible in connection with its navigation, operation or other use, and performed no duties aboard of the tug. Braner's time sheet record was kept by the chief dispatcher of the defendant and not by the master of the Invincible, nor did the master assign Braner or any other float-man to work on the carfloats. Such assignment was made by the chief dispatcher of the defendant. Braner kept records under the direction of the dispatcher of the carfloats moved by the Invincible and delivered these records to the dispatcher at the conclusion of his work.

Braner met his death on the night of July 20, 1941, in the East River when he

went overboard from a carfloat which the Invincible had in tow.

The affidavit of Dettman, who was the chief dispatcher employed by the defendant, is in corroboration of Brusich's affidavit and recites in addition the work done ashore by Braner as a bridge-man and states that at no time was Braner a member of the crew of any vessel. Further corroboration is found in the affidavit of McCafferty, secretary of the defendant. This affidavit recites that the defendant had, prior to the death of Braner, fully complied with the provisions of the Longshoremen's and Harbor Workers' Compensation Act and that Braner was in the employ of the defendant not as a member of the crew but as a harbor worker.

The plaintiff took the depositions of Brusich, Sehen, a deck-hand on the tugboat, and of Dettman, the chief dispatcher, and submitted those depositions in opposition to the motion. These depositions do not in any degree disclose a different character of work or employment than is described in the affidavits of Brusich, Dettman and McCafferty. In brief, the facts are not in dispute.

■ Rule 56(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that judgment may be entered if the pleadings, depositions and admissions show there is no genuine issue as to any material fact. The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 932, provides that every employer shall be liable for and shall secure the payment to his employees of compensation payable under the Act. The defendant complied with the terms of this statute and there can be no dispute that under the terms of the Act, 33 U.S.C.A. § 902(4), the defendant was the employer of the decedent. The term "employee" is defined in the same section and subdivision of the Act as one who is employed in maritime work in whole or in part upon the navigable waters of the United States, and Section 902(3) of the Act recites certain exceptions. The term "employee" does not include a master or member of a crew of any vessel.

■ Moreover, where the statute applies, the remedy in compensation is exclusive. 33 U.S.C.A. § 905, provides: "The liability of an employer prescribed in section 904 of this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife * * * to recover damages from such employer at law or in admiralty on account of such injury or death."

■ The court will grant summary judgment where it appears, as herein, that the employer has provided compensation for an employee who is subject to the Act. Doll v. Scott Paper Co., 3 Cir., 91 F.2d 860; Hawn v. American S. S. Co., D.C., 27 F.Supp. 410.

■ It remains only to be said in this case that on the facts adduced the decedent was not a master or member of the crew of a vessel, International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157; De Wald v. B. & O. R. Co., 4 Cir., 71 F.2d 810, and what the designation of the employee is as a matter of terminology is not controlling. South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; see, also, Diomede v. Lowe, 2 Cir., 87 F.2d 296, certiorari denied, 301 U.S. 682, 57 S.Ct. 783, 81 L.Ed. 1340.

The plaintiff relies on the provisions of the Jones Act, which recite, 46 U.S.C.A. § 688: "Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply."

■ From a comparison of the two statutes, the Longshoremen's and the Jones Act, the question necessarily suggested is whether an employee who is not a member of the crew of a vessel may be regarded as a seaman. The question was apparently answered in International Stevedoring v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, where it was held that a stevedore or longshoreman is a "seaman" within the meaning of the Jones Act, although he is not a member of the crew of a vessel. Thus on the face of the two statutes it would appear that the Jones Act was available to the plaintiff. But it must be observed that the Jones Act was passed in 1920, whereas the Longshoremen's Act was enacted in 1927. The objective in part of the latter Act was to provide compulsory compensation to such "seamen", i. e. stevedores or longshoremen, and to leave other "seamen", i. e. masters and members of the crew to pursue their remedies under the Jones Act. De Wald

v. B. & O. R. Co., 4 Cir., 71 F.2d 810, certiorari denied, 293 U.S. 581, 55 S.Ct. 94, 79 L.Ed. 678; see also Henderson v. Jones, 6 Cir., 110 F.2d 952; and Moore Dry Dock v. Pillsbury, 9 Cir., 100 F.2d 245. There are cases, however, holding that such work as was performed by the decedent floatman did not make him a "seaman" in the true sense of the word. De Wald v. B. & O. R. Co., 4 Cir., 71 F.2d 810; Johnson v. American-Hawaiian S. S. Co., D.C., 14 F. 2d 534, and The John B. Lyon, D.C., 33 F. 184.

It would seem, therefore, that there is an adequate remedy provided for the plaintiff in the Longshoremen's and Harbor Workers' Act and that this motion for summary judgment by the defendant must be granted without prejudice, however, to the pursuit of any and all other remedies open to the plaintiff. Settle order.