BROWN–PACIFIC–MAXON, Inc., a corporation, et al., Plaintiffs,

v.

Warren H. PILLSBURY, Deputy Commissioner, 13th Compensation District, Defendant.

No. 32884.

United States District Court
N. D. California, S. D.
Dec. 8, 1953.

Scott Conley, Keith, Creede & Sedgwick, San Francisco, Cal., for plaintiffs.

Lloyd H. Burke, U. S. Atty., Charles E. Collette, Asst. U. S. Atty., San Francisco, Cal., for defendant.

GOODMAN, District Judge.

Plaintiff seeks to set aside a compensation order made by the Deputy Commissioner pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., as made applicable to employment at military bases of the United States outside the continental United States by the Defense Bases Act, as amended, 55 Stat. 622, 42 U.S.C.A. §§ 1651–1654. The order awarded compensation to George D. Canaday for injuries received in an automobile accident which occurred on May 29, 1949 while he was employed by plaintiff as a heavy-duty mechanic on the Island of Guam. The question tendered is whether there is substantial evidence in the record before the Deputy Commissioner, considered as a whole, to support the finding that Canaday's injuries arose out of and in the course of his employment.

The only evidence in the record on this issue is Canaday's own undisputed testimony. He testified that while he was

employed on the Island of Guam, he was housed by plaintiff in a barracks at a camp some seven or eight miles from Agana, the principal city of the Island. "Ample" recreation facilities were available at the housing area itself including a theater, bowling alleys, pool halls, a beer hall, and a club where liquor was sold. There were no swimming facilities there, and those who wished to swim went to Camp Eldridge some nine miles away. Employees living at the camp were free, when off duty, to go anywhere on Guam for recreation, except to certain villages placed out of bounds presumably by the Guam police. Employees would go to Agana for a drink or to Camp Eldridge for a swim. Some of them had their own private automobiles. Free transportation was provided by plaintiff to Agana and the Navy Hospital in the form of buses running on a regular schedule. However, the purpose of the buses was not to transport employees for recreation. May 29, 1949, the day Canaday was injured, was a Sunday on which he was not on duty. Early in the evening, he and a friend attended a movie at the camp theater. When the movie was, over about 10:00 p.m., they decided to go to Agana for a coca cola since the camp PX had closed at 9 p.m. They left the camp in a jeep driven by Canaday's friend. This jeep was not owned or in any way controlled by plaintiff. Plaintiff's buses to Agana did not run that late at night. But, Canaday did not testify that that was the reason they used the jeep. He stated that he had never made use of the buses to Agana at any time prior to the accident, and knew nothing about their schedules. As Canaday and his friend were entering the Marine Drive in Agana their jeep was struck by a jeep driven by a drunken marine. Canaday was thrown to the pavement and sustained the injuries for which compensation was awarded.

The Deputy Commissioner made findings consistent with this testimony as to the circumstances under which the accident occurred. He then made further findings as follows:

"That by reason of the remote location and small size of said Island of Guam and absence of usual recreational facilities available to employees in nearby communities on the mainland, and the circumstance that claimant was housed by the employer at the Defense Base, recreational facilities were necessary to insure proper morale, health and efficiency of persons employed at said Defense Base; that the employer recognized and acquiesced in efforts by employees for such recreation and assisted in providing it; that the employer provided some such facilities at its barracks for use for which a charge was made to the employees, but that the necessity for further recreation off the employer's premises was recognized by the employer, including the facility of the use of a bathing beach elsewhere, etc.; that the employer provided transportation by bus from its barracks to the town of Agana without charge to its employees, but that such transportation was not available in the late evening; that said Island of Guam is a small island occupied mainly by military forces and Government contractors and their employees; that traffic hazards from the use of automobiles on said Island and presence or absence of traffic controls are attributable primarily to such Government operations; that traffic congestion and traffic problems arise principally out of such Government operations, and that therefore claimant was also exposed especially by the nature of the conditions under which he was housed and maintained on said island to the risk of such automobile injury, and that therefore claimant's injury arose out of and in the course of his employment."

It is evident that the Deputy Commissioner sought to bring Canaday's injuries within the scope of his employment on two theories either alternatively or in combination. His first theory is that any recreational trip away from the housing area was within the scope of employment because the housing accommodations were at a remote spot having insufficient recreational facilities close by and

travel to a distance was necessary for the recreation required to maintain working efficiency. His second theory is that employment on the Island of Guam resulted in exposure to such unusual traffic hazards that traffic accidents were a special risk of the employment.

There is not one word of testimony in the record to support essential findings made by the Deputy Commissioner to sustain these theories. Nothing appears in the record about the absence on Guam "of usual recreational facilities available to employees in nearby communities on the mainland." The only testimony which might be relevant to this finding is Canaday's statement that "Guam is a thriving community." Only an inference quite the opposite from that drawn by the Deputy Commissioner would be warranted by that statement.

The purport of the finding that Canaday was housed "at the Defense Base" is not clear. There is no testimony that the housing accommodations were at a "Defense Base," unless the entire Island of Guam is a Defense Base. Certainly Canaday was not housed where he worked, because he stated that he rode to work on a bus every morning about six. Nothing appears in the record about the nature of the place where the housing accommodations were located except that it was some seven or eight miles from Agana.

■ There is no evidence in the record that "the necessity for further recreation off the employer's premises was recognized by the employer, including the facility of the use of a bathing beach elsewhere." The only testimony in respect to plaintiff's attitude toward the recreation of its employees is that it provided ample facilities where they were housed and placed no restrictions on their going elsewhere when they were off duty. Apparently the Deputy Commissioner assumed from the reports of a case arising out of another Compensation District

that plaintiff provided the swimming facilities away from the housing area.[1] But, even indulging in this assumption, it does not follow that plaintiff recognized any need for its employees to leave the housing area for other forms of recreation which it provided there at reasonable hours.

■ The undisputed facts which do appear in the record do not support the conclusion, be it one of fact or law, that Canaday's recreational trip away from the housing area was within the scope of his employment. He was not housed at some remote spot where he worked but in a housing area where more recreational facilities were provided than would be available adjacent to the home of the average employee in the United States. Moreover, the housing area was only a few miles and a few minutes drive from the City of Agana. It was no farther from town than are many residential suburbs in the United States. An employer in the States would indeed be surprised if he were held responsible for the injuries suffered by an employee while driving the family car a few miles from home to get a coke on a Sunday evening when the neighborhood grocery was closed. Certainly it cannot be said that Canaday's excursion for a coke at 10 o'clock on a Sunday evening was essential to maintain his working efficiency.

■ There is no evidentiary basis whatsoever in the record for the Deputy Commissioner's findings supporting his conclusion that Canaday was exposed especially to the risk of injury in an automobile accident. There was no testimony that the Island of Guam is occupied "mainly by military forces and Government contractors and their employees," or, if so, that the character of the Island's occupants resulted in any unusual traffic hazards. Not a word appears in the record about the "presence or absence of traffic controls," "traffic congestion," or "traffic problems." Indeed the

1. O'Leary v. Brown-Pacific-Maxon, 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483, reversing 9 Cir., 1950, 182 F.2d 772.

only facts in the record indicate that the accident in which Canaday was injured was of a most common type, in no way brought about by any traffic congestion or lack of traffic controls. The car in which he was riding was struck at an intersection by a drunken driver.

In short, considering the record as a whole, there is no evidence to support the conclusion that Canaday's injuries were incurred in the scope of his employment.

The motion of the defendant Deputy Commissioner to dismiss is denied and his order is vacated and set aside.