PAN–AMERICAN WORLD AIRWAYS,
INC., and The Travelers Insurance
Company, Petitioners,

v.

Stephen O'HEARNE, Deputy Commis-
sioner, Fifth Compensation District,
U. S. Department of Labor, Bureau of
Employees' Compensation, Defendant.

Civ. A. No. 3136.

United States District Court
E. D. Virginia,
Norfolk Division.

Sept. 4, 1963.

Seawell, McCoy, Winston & Dalton (John W. Winston), Norfolk, Va., for petitioners.

C. V. Spratley, Jr., U. S. Atty. (Roger T. Williams, Asst. U. S. Atty.), Norfolk, Va., Leavenworth Colby, Chief, Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., for defendant.

WALTER E. HOFFMAN, Chief Judge.

Petitioners seek to enjoin the enforcement of a compensation order made by the Deputy Commissioner pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq., as the same has been made applicable to the Defense Base Act, 55 Stat. 622, 42 U.S.C.A. §§ 1651–1654. The order awarded compensation benefits to the widow and two children of Robert M. Smith, who was killed in a jeep accident on April 24, 1958, while employed by Pan-American World Airways, Inc. (hereinafter called Pan-Am) at a defense base on the Island of San Salvador, British West Indies.

Because Smith was killed in the same accident which resulted in the death of one Frank J. Gondeck, it is appropriate to note that the claim for compensation arising from Gondeck's death was allowed by the Deputy Commissioner for the Sixth Compensation District, but this award was reversed by the district court and the district court was upheld on appeal, United States v. Pan American World Airways, Inc., 5 Cir., 299 F.2d 74.

Certiorari was denied, sub nom. Gondeck v. Pan American World Airways, 370 U.S. 918, 82 S.Ct. 1556, 8 L.Ed.2d 499, rehearing den. 371 U.S. 856, 83 S.Ct. 17, 9 L.Ed.2d 93. While the record in Gondeck varies somewhat with the record in the instant case, we think that the same principles govern both cases. Accordingly the award of the Deputy Commissioner must be reversed and the petitioner, Pan-Am, granted the relief prayed for in this proceeding.

When this case was initially before the court on the first award of the Deputy Commissioner dated June 28, 1960, it was subsequently remanded for further findings of fact with respect to the question as to whether or not the death of Smith arose out of and in the course of his employment. Supplementary findings of fact, together with a memorandum, were filed by the Deputy Commissioner on April 5, 1962, and Pan-Am and its carrier then filed another petition for injunction on April 19, 1962.

Before turning to the evidence upon which the Deputy Commissioner based his findings and conclusions, we must acknowledge certain principles of law controlling upon any district court in reviewing such findings. It is well settled that the act is to be liberally construed in favor of the injured claimant or his dependent family.[1] The burden is upon the petitioner to show that the evidence does not support the compensation order.[2] The Deputy Commissioner is not bound by common law rules of evidence[3] and logical deductions and inferences which may be drawn by the Deputy Commissioner should be taken as established facts and are not judicially reviewable.[4] Even if the evidence permits conflicting inferences, the inference drawn by the Dep-

1. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 414, 52 S.Ct. 187, 76 L.Ed. 366; De Wald v. Baltimore & O. R. Co., 4 Cir., 71 F.2d 810, 812, cert. den. 293 U.S. 581, 55 S.Ct. 94, 79 L.Ed. 678.

2. Southern Stevedoring Co. v. Henderson, 5 Cir., 175 F.2d 863.

3. Crowell v. Benson, 285 U.S. 22, 48, 52 S.Ct. 285, 76 L.Ed. 598.

4. Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229.

uty Commissioner is not subject to review.[5] The findings of the Deputy Commissioner are presumed to be correct[6] and, if supported by evidence on the record considered as a whole, should be regarded as final and conclusive and are not subject to judicial review.[7]

With the foregoing in mind, we are called upon to examine the findings of the Deputy Commissioner. While the initial findings made the bare assertion that "the injury and death arose out of and in the course of employment," it is substantially conceded that there was no evidence in the record to support this conclusion and, therefore, the matter was remanded. We shall, therefore, refer to the supplementary findings of fact, the material portions being herein set forth:

"That the deceased herein at the time of his injury and death was on a temporary duty assignment for the employer on the Island of San Salvador; that the contract of hire was for 45 days; that San Salvador, B. W. I., is an island with maximum dimensions of 13 miles by 5 miles, and comprising 42 square miles, with a native population of about 800; that the employer's installations were in various parts of the island, so that the entire island was practically the work site; that the contract of hire required the employer to furnish transportation from the point of hire to the down range bases where the work was to be performed, and on completion of the contract to return the employee to the point of hire, Miami, Florida, for a 7-day paid vacation; that if both parties were in agreement, the contract was renewable for another 45 days, at the same or another down range base, and thereafter for 3-month periods, with 14-day leave periods; that by the terms of the employment they agreed to furnish the employee at the work site with room, board, recreation and transportation, etc., that on 24 April 1958 the deceased herein having completed his regular work assignment for the day, but on call in case of need, left the employer's camp with three fellow employees in an employer's jeep, operated by one of the fellow employees, to visit Cockburn Town, about three miles away; that before starting back to the camp the party stopped at a native tavern, a place where employees of the employer were commonly known to stop for a beer; that on the return trip to the camp, within one-half hour of their departure, and on a road maintained by the employer, near the main gate of the camp, the jeep went out of control of the driver into a skid and turned over, causing the injury and death of the deceased employee herein; that the use of employer's vehicles was authorized on application to the recreation; that the recreation officer did not issue a trip ticket or other paper in writing when authorizing the use of a vehicle for recreation purposes; that there was no prohibition against an employee riding as a passenger in a vehicle of the employer; that the employer did not maintain any other transportation between the town and camp for the employees; that the exigencies of the employment required him to remain on the island; that the work site being a small island, the employee could not escape the work environment; that at the time of his injury and death the deceased was engaged in an activity which, under the circum-

5. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483.

6. Anderson v. Hoage, 63 App.D.C. 169, 70 F.2d 773; Luckenbach S.S. Co. v. Norton, 3 Cir., 96 F.2d 764; Burley Welding Works v. Lawson, 5 Cir., 141 F.2d 964.

7. O'Leary v. Brown-Pacific-Maxon, Inc., supra; Cardillo v. Liberty Mut. Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; Charleston Shipyards, Inc. v. Lawson, 4 Cir., 227 F.2d 110.

**518**

stances, was incidental to his employment."

There are several immaterial references to facts which are not supported by the record or inferences therefrom, but as petitioner has not attacked most of these findings they will be disregarded [8]. What is material are certain omissions of undisputed facts. For instance, it is conceded that the four employees, including Smith, were drinking beer or champagne from shortly after 4 P.M. until approximately 7:30 P.M. with time out for dinner, at the Reef Club, a recreation center provided on the defense base. It must be conceded that the jeep was being used for a personal mission, with no showing of any necessity for the trip unless it can be classified for essential recreational purposes. As beer was readily available to the employees at the Reef Club, and as this was the purpose of the employees' visit to Cockburn Town, it is a stretch of one's imagination to say that the trip to the native village was a reasonably necessary recreational activity. While it is true that apparently no *written* orders were issued as to the use of company vehicles prior to the fatal accident, it must be conceded that no employee sought permission to use the jeep on the day in question and, indeed, there is uncontradicted evidence, apparently not accepted by the Deputy Commissioner, to the effect that Smith and Norman (the driver) had been warned a few days earlier that the jeep was not to be used for any personal mission. The Deputy Commissioner emphasizes that no employee was prohibited from riding as a *passenger* in the employer's vehicle. This is true, but such a fact does not bring the action of the employee-passenger "within the course of his employment;" nor does it bring Smith's death within that line of authorities

holding that it "arose out of his employment."

The theory upon which the Government proceeds is the expansion of the "zone of special danger" doctrine as enunciated in O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 506, 71 S.Ct. 470, 95 L.Ed. 483. We do not read O'Leary as commanding a finding that the present case falls within an expression of that doctrine. In O'Leary, the award was made to the dependents of the deceased where he was engaged in attempting to save the lives of two men who were swimming in a prohibited area. The court said:

"As we read its opinion the Court of Appeals entertained the view that this standard precluded an award for injuries incurred in an attempt to rescue persons not known to be in the employer's service, undertaken in forbidden waters outside the employer's premises. We think this is too restricted an interpretation of the Act. Workmen's compensation is not confined by common-law conceptions of scope of employment. * * * The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. * * * Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose. * * * A reasonable rescue attempt, like pursuit in aid of an officer making an arrest, may be 'one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute.' * * This is not to say that there are not

8. The record is totally devoid of certain facts found by the Deputy Commissioner. Obviously he has made reference to certain facts which were stipulated in the Gondeck case. Since the record in Gondeck was not a part of the present con-

troversy, and not the subject of any stipulation, the findings are somewhat suspect, especially where the Deputy Commissioner accepts some findings in Gondeck and rejects others.

cases 'where an employee, even with the laudable purpose of helping another, might go so far from his employment and become so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment.' * * * *We hold only that rescue attempts such as that before us are not necessarily excluded from the coverage of the Act as the kind of conduct that employees engage in as frolics of their own.*" (Emphasis supplied)

With the limiting effect of O'Leary it hardly seems necessary to point out that Smith and his companions were engaged in a frolic of their own. The mere fact that Pan-Am may have known that employees had occasion to visit the native tavern in Cockburn Town makes it no less a personal mission [9]. And where the purpose of the mission was to drink beer which was readily available at the provided recreational facilities on the main base, it is clear to this court that the Deputy Commissioner has gone beyond the permissible limits in holding that, in this case, the excursion into Cockburn Town and return was within the scope of employment.

At the time of argument the Government advanced the rather unique argument that any accident or death occurring on an island where there is a defense base, involving an employee of the contractor, "arises out of and in the course of employment" except where the injury or death is occasioned solely by the intoxication of the employee or by the willful intention of the employee to injure or kill himself or another. 33 U.S.C.A. § 903. The short answer to this argument is that courts are not created to take over the function of legislators. Congress has expressly provided that if the injury proximately results from a *war-risk hazard,* compensation is payable *whether or not such person then actually was engaged in the course of his employment.* 42 U.S.C.A. § 1701. There is no suggestion in the present case that the death resulted from a war-risk hazard. The claim is compensable, if at all, under 42 U.S.C.A. §§ 1651–1654. True, the place where the injury or death occurs is immaterial and Congress has specifically provided for coverage "during transportation to or from his place of employment, where the employer or the United States provides the transportation or the cost thereof." Since this accident occurred in 1958, § 1651 has been amended by Congress on five separate occasions but, to this date, the provisions requiring that the accident or death arise out of and in the course of employment have not been altered. Other than where a war-risk hazard is involved, it is still necessary that the evidence on the record considered as a whole support the finding that the injury or death arose out of and in the course of employment—not in the common-law conceptions of employment, but a showing that the obligations or conditions of employment created a "zone of special danger" out of which the injury arose.

Traffic accidents ordinarily create no "zone of special danger." This is not to suggest that traffic accidents are not compensable, and the fact that the accident occurs on an island such as San Salvador is a factor for consideration in determining whether it was reasonably necessary for the employee to seek recreation at some place other than that provided by the employer. The Government relies upon Self v. Hanson, 9 Cir., 305 F.2d 699, in which the injured

---

[9]. The Deputy Commissioner makes a finding that "the party stopped at a native tavern, a place where employees of the employer were commonly known to stop for a beer." Such a finding must have been taken from the stipulation in Gondeck which says, "where PAA men were commonly known to go for beer." The record in the present case shows only that two tavern girls knew Smith personally. There is no justifiable inference in this record that employees of Pan-Am were "commonly known to stop for a beer" at the native tavern in Cockburn Town.

employee was granted the benefits of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., as extended by the Defense Base Act, 42 U.S.C.A. §§ 1651–1654. The distinction lies in the fact that, in Self, vehicles for unsupervised recreation were provided by the employer without limitation on Guam; it was, indeed, customary to provide transportation to employees going to and from Edusa School as a fringe benefit; Mrs. Self, in addition to her regular duties as a secretary, was employed as a teacher four nights each week, all with the knowledge and approval of the Air Force Base; on the night in question she was unable to get her accustomed means of transportation from the school to the Base, but her immediate supervisor—a male—arranged to call for her; the "boss" started on another official mission but later deviated by deciding to park for the purpose of "looking" at a new Japanese ship in the harbor; while so parked and engaged in this important activity, a weapons carrier crashed into the parked vehicle and Mrs. Self was injured.

The Self case is typical of the situation in which the employer has recognized and sanctioned island-wide recreation, even to the extent of deviating from an authorized route for private personal convenience. The employee was injured while putting to use for which they were intended the recreational or other facilities provided by the employer. Along similar lines is Hastorf-Nettles, Inc. v. Pillsbury, 9 Cir., 203 F.2d 641, where the custom was established for the employer to give rides to all employees in the Alaska area. No such custom existed on San Salvador; nor was transportation provided by the employer from the main base to Cockburn Town.[10]

It is significant to note that the position taken by the Government in Self is directly contrary to the argument now advanced.

There are, of course, authorities which support an award where recreational activities contribute to a higher efficiency of the employer's work and, when conducted in a restricted area of employment in a manner not prohibited by the employer, constitute an incident of employment. Smith, Hinchman & Grylls Associates, Inc. v. O'Keeffe, M.D.Fla., 222 F.Supp. 4 (decided January 23, 1963). It may also be successfully argued that where specific recreational facilities are not made available by the employer, and are considered normal in the life of an average individual, a personal mission for such recreational purposes may be considered a necessary incident of the employment. Nevertheless, on the record in the instant case, we are called upon to uphold an award without regard to the recreational facilities made available to the employee. Thus, if bowling alleys are made available on the defense base, we are asked to uphold an award in favor of an employee who visits a bowling alley in a nearby village for his own personal pleasure. If pool tables are available on the defense base (as they were at the Main Base on San Salvador), the employee, it is argued, is still covered under the terms of the Act if he elects to leave the base and visit a nearby town to play a game of pool. And if the Government's argument is sound, an employee visiting a bawdy house could be entitled to compensation if injured en route to, from, or while in the house of ill-fame. Compensation under such circumstances may appear far-fetched, but such activity is not within the exception set forth in 33 U.S.C.A. § 903. Actually the Government now contends that compensation would be payable under a like set of facts as they rely, in part, upon the noteworthy admiralty case pertaining to an award for

10. The opinion in the Gondeck case, United States v. Pan American World Airways, Inc., 5 Cir., 299 F.2d 74, 77, refers to the fact that Gondeck was not using "the means of travel to and from the place of recreation furnished by the employer." This statement was taken from a stipulation of facts indicating that Pan-Am operated a scheduled bus service from the base to Cockburn Town. Such a statement of fact was apparently erroneous as the record in the present case reveals that taxi service constituted the only available transportation to and from Cockburn Town.

maintenance. Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503.

We attach no significance to the "maintenance and cure" cases relied upon by the Government. Maintenance and cure is, at best, a temporary relief arising from the ancient maritime doctrine that the seaman is a ward of the admiralty. It is in no sense a payment for permanent or total disability or death. Nevertheless, the doctrine of "reasonable recreation" now urged by the Government strikingly resembles an extension of the maritime doctrine that anything occurring while the employee is "on leave," short of willful misbehavior or a deliberate act of indiscretion, is compensable.

In Larson, Workmen's Compensation, § 22.00, pp. 328, 329, the general rule is set forth:

"Recreational or social activities are within the course of employment when—

"(a) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or

"(b) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or

"(c) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life."

In summary, compensation is payable for an injury or death suffered during the course of recreation where the recreational activity is one encouraged, organized or supported by the employer for business purpose. 99 C.J.S. Workmen's Compensation § 221 c., p. 737.

Obviously any compensation award in the present case can only be upheld under the theory that Pan-Am impliedly required participation, or by impliedly making the activity part of the services of the employee. This is difficult to comprehend when we know that beer was available at the base facilities. Moreover, the record fairly discloses that movies, pool tables and boats were provided by the employer.

While each case must turn upon the particular facts, we agree with Pan-Am that the factual situation in Brown-Pacific-Maxon, Inc. v. Pillsbury, S.D.Cal., 132 F.Supp. 421, is substantially identical with the facts here presented. We are not impressed with the attempted analogy to cases cited which uphold awards to injured employees on transportation facilities impliedly provided by the employer. Lamm v. Silver Falls Timber Co., 133 Or. 466, 468, 277 P. 91, 286 P. 527, 291 P. 375; Liberty Mutual Ins. Co. v. Gray, 9 Cir., 137 F.2d 926; C. F. Lytle Co. v. Whipple, 9 Cir., 156 F.2d 155; Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028. It is a far cry to say that jeeps, maintained by the employer for business purposes, constitute employer-provided transportation merely because the record discloses that the employer's representative has the authority to grant an employee the occasional privilege to use such vehicle.

The conclusion herein reached is not without regard to the unreported opinion by the now Circuit Judge Albert V. Bryan, while sitting as a District Judge, in Travelers Ins. Co. v. O'Hearne, Civil Action No. 1436, Norfolk Division, decided June 12, 1953. The case involved the death of one in Africa and, in upholding the award, Judge Bryan said:

"Wilson's employment contract required him to live in Africa at the site of the project; his work required him to live at the site of the project; his residence or living at the site was an integral part of his employment—this was so because of the geographical location of the project, the absence of other convenient residential accommodations, and the nature of the work; procurement of recreation under these circumstances, including travel therefor, was an obvious incident to such occupation-

al residence, and Wilson's injury occurred in the course of recreation travel taken as a part of the occupational residence constituting an element of his job. Thus his work agreement brought him into a 'zone' where travel was required for recreation, and in seeking recreation under these exacting and unconventional conditions he was acting in 'the course of his employment.' O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 507, 71 S.Ct. 470, 95 L.Ed. 483."

If the foregoing opinion is intended to provide that compensation is payable to any employee of a contractor sent to a foreign country or island and that, therefore, a "zone of special danger" is automatically created, the writer of this opinion must respectfully disagree. If, on the other hand, there was a complete absence of recreational facilities, thereby impliedly suggesting that the employer brought the recreational activity within a part of the employee's services, there is a legal basis to support the award. Irrespective of this fine distinction, we revert to the admitted fact that the recreation sought by Smith and his companions in Cockburn Town was adequately provided by the employer on the Main Base. Therefore, unless the "positional risk" doctrine can be applied to this case, it is abundantly clear that Smith's death did not arise out of and in the course of his employment.

 It is freely recognized that the "positional risk" is applicable only to a very special and restricted class of cases where the employment itself places the employee in a particular place at a particular time with the risk not being one personal to the employee but due exclusively to the situation. Larson, Workmen's Compensation, § 6.40. Where the injury is the result of a hazard to which the employee would not have been exposed but for the employment, that is, where it results from a hazard peculiar to the employment, it is clearly compensable. But risks common to the neighborhood and common to the general public do not generally arise out of the employment.

We attach no significance to the USO show cases upholding awards to entertainers and others employed as such for the purpose of travel in foreign countries. The very nature of the employment impliedly provides for constant movement, including vacation time between shows.

In summary, unless by judicial interpretation we are to alter the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., or otherwise modify the Defense Base Act, 42 U.S.C.A. §§ 1651–1654, to meet the contention now advanced by the Government, thereby affording protection to any worker from the time he leaves the United States until he returns, irrespective of the nature of his activity on foreign soil, we must conclude that there can be no recovery in this case where the employee, engaged in a personal mission, met his death while participating in recreation which was adequately provided at the defense base.

The petitioner will prepare and present an appropriate order in accordance with this memorandum.