## THE BUENA VENTURA.

(District Court, S. D. New York. February 28, 1916.)

1. SEAMEN ⊜11—WHO ARE SEAMEN—WIRELESS TELEGRAPH OPERATOR.

Libelant was a wireless telegraph operator who went on board respondent vessel pursuant to a contract between her owners and the Marconi Wireless Telegraph Company, by which he was required to sign the ship's articles, was classed as an officer, and messed with them. It was further provided that, should the vessel render salvage services through the use of the wireless apparatus, the Marconi Company was to have a share of the money earned. Libelant signed the articles at a stated wage of 25 cents per month, which was not collected. He was in fact hired and paid by the Marconi Company, which supplied him and the apparatus for a stated sum per month. Libelant also operated the launch when in port through a private arrangement with the captain and for which he was paid. He became sick and was discharged and taken to a hospital. *Held*, that he was a member of the crew, and, as a seamen who fell ill in the

service of the ship, was entitled to maintenance and cure at the expense of the vessel.

2. SEAMEN ⟨⟐⟩11—"CREW"—WHO CONSTITUTE CREW OF SHIP.

By the "crew" of a vessel, those persons are naturally and primarily meant who are on board her aiding in her navigation without reference to the nature of the arrangement under which they are on board.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Crew.]

3. SEAMEN ⟨⟐⟩11—WHO ARE SEAMEN.

A man who serves a ship in her navigation as the result of a contractual engagement of any kind is a member of the crew and entitled to the privileges of a seaman.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seamen.]

In Admiralty. Suit by George Gerson against the steamship Buena Ventura. Decree for libelant.

Silas B. Axtell, of New York City, for libelant.
Russell T. Mount, of New York City, for claimant.

HOUGH, District Judge. The pleadings present a somewhat novel application of the doctrine that vessel and owners are liable in case a seaman falls sick in the service of the ship to the extent of his maintenance and cure and wages, at least so long as the voyage is continued. The Osceola, 189 U. S. at 175, 23 Sup. Ct. 483, 47 L. Ed. 760. The last phrase of this sentence has no application to the matter in hand, because Gerson was discharged sick at an intermediate port and was cured before the voyage ended.

[1] Libelant was a "wireless operator" who came on board the Buena Ventura in pursuance of a contract between her owners and the Marconi Wireless Telegraph Company of America. By this agreement Gerson was required to sign the ship's articles, he was classed as an officer, and messed with them; assistance, if any, of the wireless apparatus operated by him was to bring to the Marconi Company "a fair and reasonable proportion of salvage moneys" that might be awarded to the shipowners; and, finally, a part of his duty was to instruct an officer of the ship in the art of sending messages by wireless apparatus.

Libelant did sign the articles, but purely as a formality; his stated rate of wage is 25 cents per month, which as a matter of fact was never collected; he received board and lodging from the ship, and a regular stipend from the Marconi Company.

It is quite true in one sense that the Marconi Company hired out their apparatus and a man to go with it at $100 a month.

It appears that Gerson did not find his duties as wireless operator so engrossing but that he could do other things, and by an arrangement between himself and the captain he operated the launch while in port, receiving therefor $15 a month. No such bargain is mentioned in the articles, and it does not affirmatively appear that the shipowners knew anything about it.

⟨⟐⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Gerson fell ill of iritis, an inflammation of the iris. It appears that he once told the master that on another vessel he had received some acid in one of his eyes from which he had suffered annoyance. There is no evidence to show that the iritis was connected with this earlier difficulty. There is no medical testimony, but I think it a matter of common knowledge that iritis is a difficulty frequently, if not usually, resulting from long-continued exposure to brilliant sunlight.

In my judgment Gerson fell ill "in the service of the ship," and is therefore entitled to maintenance and cure if he is to be regarded as a seaman or a member of the crew.

[2] The word "crew" is explicitly considered in United States v. Winn, 3 Sumn. 209, Fed. Cas. No. 16,740. What Justice Story there said has not been improved upon, though the language of Dodge, J., in The Bound Brook (D. C.) 146 Fed. at 164, may be quoted as a fair summary:

"When the 'crew' of a vessel is referred to, those persons are naturally and primarily meant who are on board her aiding in her navigation, without reference to the nature of the arrangement under which they are on board."

The word "seaman" undoubtedly once meant a person who could "hand, reef and steer," a mariner in the true sense of the word. But as the necessities of ships increased, so the word "seaman" enlarged its meaning. Even in Bean v. Stupart, 1 Doug. 11, it was held that a warranty to carry "30 seamen besides passengers" meant that the 30 seamen included a cook, a surgeon, and other employés, and did not mean merely able seamen. And a cook was explicitly held to be a seamen in this court by Betts, J., in Allen v. Hallet, Abb. Adm. 573, Fed. Cas. No. 223. By the same course of reasoning an employé on a barge may be regarded as a seaman. The Walsh Bros. (D. C.) 36 Fed. 607. Also, a cooper. United States v. Thompson, 1 Sumn. 168, Fed. Cas. No. 16,492. See, also, The Mary Elizabeth (C. C.) 24 Fed. 397. This court has even decided that a bartender may rank as a seaman, in The J. S. Warden (D. C.) 175 Fed. 314.

But the reason of the matter is shown best by Judge Benedict's decision in The North America, 5 Ben. 486, Fed. Cas. No. 10,314, wherein he held that a fireman was a seaman.

The reason for such generous interpretation of so simple a word as "seaman" is that every one is entitled to the privilege of a seaman who, like seamen, at all times contribute to and labor about the operation and welfare of the ship when she is upon a voyage. When mariners in the old sense of the term were the only persons who enabled the ship to go in safety, then they were the only seamen; when firemen contributed quite as much as the deck hands to that end, they became seamen in the eye of the law. And in my judgment a wireless operator is to-day a far more important person in the safe operation of a voyaging vessel than is any one imaginable fireman, cook, or the like.

If therefore the shipowner had directly hired this libelant as a wireless operator and put him on the articles not at the nominal sum of 25 cents a month, but at the wage he actually received from the

Marconi Company, there would be no doubt of his right to the privilege of a seaman; to be regarded as a member of the crew, and to be entitled to maintenance and cure as such.

Claimant's argument is that the right in question is a contractual right and has always grown out of and can only be justified by the seaman's contract of employment.

I think this is true, but I fail to discover in any reported case, or in the reason of the matter, any justification for the idea that the measure of right depends, not on the fact of service, but on the quantum of wage paid therefor.

It is urged that a vessel can clear from no port of the United States without having the entire ship's company set forth in the articles. This also is true, but does not, I think, advance the matter, for if Gerson belonged to the ship's company he belonged to the crew.

The fact is that Gerson served the ship; he was subject to discipline under the orders of the captain, and his business was to assist in a very important manner in navigating the vessel. It is this relation, and not the 25 cents a month, paid or unpaid, which made him a member of the crew entitled to the privileges of a seaman.

[3] It is preferred to put decision on this broad ground; i. e., that a man who serves the ship as the result of a contractual engagement of any kind, and serves her in her navigation, is a member of the crew and entitled to the privileges of a seaman.

In this case, however, it is plain that the arrangements made between the shipowners and the Marconi Company may well have conferred upon Gerson a status and a relation to the ship quite sufficient to justify his present demand without laying down the comprehensive principle hereinabove stated.

When this agreement is studied, it is seen that the shipowners really hired Gerson and the apparatus; they did not covenant to pay Gerson directly, but they agreed to pay, and in addition to this payment they specifically agreed that the libelant should rate as an officer, that he should sign the ship's articles, etc. In other words, the agreement shows that the parties thereto considered him a member of the crew whose business it was (inter alia) to assist in salvages. To be entirely logical, claimant would have to argue that, in the event of the Buena Ventura's making a salvage and getting an opportunity to salve by reason of the wireless apparatus, the Marconi Company should share in the salvage moneys, but that the wireless operator should have no share at all. It seems to me that such a proposition would be monstrous; yet, if Gerson is no more than the employé of the Marconi Company, such must be the result under this agreement.

The libelant may take a decree for $297.71, with costs.