FOLKES et al. v. PROCEEDS, REMNANTS AND SURPLUS OF THE GENERAL GEO. W. GOETHALS (FOLLIARD, Intervener).

THE GENERAL GEO. W. GOETHALS.

District Court, E. D. New York. April 16, 1928.

No. 10354.

1. Seamen ⊕27(4)—No maritime lien for wages arises while vessel is in custody of marshal.

Settled rule is that no maritime lien for wages arises during time vessel is in custody of marshal.

2. Seamen ⊕27(4)—Seaman seeking recovery of wages against ship has burden of proof.

In suit by seaman to recover against ship for wages, burden of proof is on petitioner.

3. Seamen ⊕16—Seamen held entitled to reasonable value of services rendered while vessel was in custody of marshal.

Seamen rendering services on ship at request of owner and with knowledge of marshal, during time vessel was in custody of marshal, *held* entitled to reasonable value of actual services to be paid as expense of preserving ship.

4. Seamen ⊕17—Seamen, rendering services on ship while in custody of marshal, held entitled to $30 a month compensation.

Seamen, rendering services on ship at request of owner and with knowledge of marshal, while ship was in custody of marshal, *held* entitled to compensation of $30 a month each where one was in charge of steamer, another cooked meals, and a third attended to details coming up daily between owners, who were actively hoping for another voyage.

In Admiralty. Suit by Adolphus Folkes and others against the proceeds, remnants, and surplus of the Steamship General Geo. W. Goethals in which Eugene Folliard intervened. Petitioners held entitled to sum to be paid from fund realized from sale of ship by marshal.

Jesse L. Rosenberg, of New York City, for petitioners.

Hunt, Hill & Betts, of New York City, for intervener.

INCH, District Judge. These three petitioners, Folkes, McFarland, and Williams, were at one time seamen on the steamship Goethals. They had, on or about January 17, 1925, signed articles for a voyage and at a certain rate of wages, Folkes as third mate, McFarland as steward, and Williams as purser. That voyage took place and terminated at the port of New York, May 29, 1925. Thereupon the crew left the ship. Their wages, however, for certain period of the voyage, had not been paid.

Unfortunately the ambitious plans of the Black Cross Navigation & Trading Company, owners of the Goethals, had collapsed. These seamen naturally insisted upon the payment of their wages, and thereafter filed a libel to collect same. The Goethals was arrested by the marshal on the 16th day of June, 1925. From that date until March 29, 1926, when she was sold by the marshal, the Goethals remained in the custody of the marshal, at first with a notice, duly posted, indicating the fact, and later, and in addition, the placing on board of a keeper.

Those in charge of this enterprise had not however lost all hope, and so, according to the testimony, after the lapse of about a week, the president of the owner corporation prevailed upon these petitioners to again go on board the Goethals and stay there pending what was hoped to be another voyage. This they did, without signing any new articles or contract, and I am satisfied, from the testimony, without even an agreement to pay any definite sum during this particular period.

It can be fairly inferred that they were led to believe that only by this show of cooperation on their part would they be able to get the wages already due, and that, if such help was given and another voyage did take place, they would be duly employed again in their old jobs and wages. This sort of conduct was kept up from time to time whenever the petitioners asked for some money, and these men hung on, sometimes getting a few dollars, but more often nothing but the promise that they were about to be duly employed, as the ship was about to sail, until finally the ship was sold by the marshal.

Thereafter the aforesaid suit to recover the wages for the said voyage came on to be heard, after considerable litigation by others interested; the owner having defaulted, it was there decided by this court that the petitioners' claim for wages should be allowed in certain sums therein found to be due. This was in April, 1927. The sale of the ship by the marshal had resulted in the obtaining of the sum of $25,000, and this was deposited in the registry of the court, as reduced by payments to the clerk and marshal of proper payments. The sum of $20,131.91 now remains subject to many claims.

The petitioners thereupon, and some time in May, 1927, commenced this present suit to recover for this second period of alleged employment. The original and amended petitions indicate that this employment was a sort of continuance of the original employment. The proof on the trial, however, shows clearly that this present cause of action cannot be considered as one pursuant to articles signed or the regular employment of a seaman, but must be more on the theory that, with full knowledge that the ship was in custody of a United States marshal, at the request of the owner, the men performed services to the benefit of the ship and helped make possible the fund ultimately realized by her sale.

The claims of the petitioners are contested by an intervener, who has been allowed a lien in a certain sum; the owner of the ship, as usual, having defaulted. There has been delay on the part of the petitioners, which might be considered sufficient to bar a recovery by other than this particular kind of petitioner, and the time is certainly passed for any more of such class, if any, to be allowed to present a claim.

[1] The settled rule is that no maritime lien for wages arises during the time a vessel is in custody of the marshal. The Philomena (D. C.) 200 F. 174; The Nissequogue (D. C.) 280 F. 174, and other cases that may be cited.

[2] The burden of proof was on the petitioners, and, considering all the testimony, I fail to find sufficient proof of any exact compensation agreed upon.

[3] It is equally plain from the testimony that each of these men rendered certain services on the ship for a considerable period of time, at the request of the owner and with the knowledge of the marshal, which were of some benefit to the well-being of the ship. They must have been known to the marshal in charge, by this very continued presence, and by the fact that for almost four months, from June 16 to September 24, 1926, the marshal had no keeper on board. These men were therefore solely protecting the property during this time, and during the re-

mainder of the period, while a keeper was on board, no protest appears to have been made against continuing the presence of these men.

It would seem, therefore, that this case is one where the reasonable value of the actual services of these three men should be ascertained and allowed, upon the principles of equity and justice indicated in New York Dock Co. v. S. S. Poznan, 274 U. S. 117, 47 S. Ct. 482, 71 L. Ed. 955. To be sure the intervener claims that such principles do not here apply, but the fact remains that some one had to be on board the ship. It was a large steamship, in good order. There was work to do, and no protest was made against their doing it. One of them was in charge of the steamer, which required attention as she lay in the stream. Another had to cook meals. The last had to attend to the details which came up daily between the owners, who were actively hoping and apparently allowed to prepare her for another voyage, which voyage almost became a fact, to the extent of removing her at one time from the Brooklyn shore to a Manhattan pier, where she was loaded, all of which, however, finally ended in nothing.

The reasonable value, therefore, of these petitioners' services, can be ascertained from the testimony, and should be paid as an expense of preserving the ship and from the fund so made possible. Each one of these men apparently lived and had their meals on board during the period in question. It would be out of the question to allow them a sum equal to the wages to which they would be entitled on a voyage under the circumstances shown here. Each one of them should be allowed some reasonable compensation for their time, etc. They were on the ship practically from June 7, 1925, to March 29, 1926. This was a period of about 9 months.

[4] Taking in consideration the quarters thus furnished, the quality of service actually required, and all the surrounding circumstances in their employment and joint use by the marshal, which employment was purely voluntary and without a definite contract, it seems to me that the sum of $30 a month each will be ample compensation, without prejudice to any claim they may have against the owners of the ship. There is no need of a reference. Their presence was in some degree useful to the marshal and the court, else they should have been put ashore.

Accordingly I direct that each one of the petitioners, Folkes, McFarland, and Williams, are entitled to the sum of $270, to be paid in full as a part of the expenses out of the fund realized from the sale of the ship by the marshal and now in the registry of the court.