## MARYLAND CASUALTY CO. et al. v. LAWSON, Deputy Commissioner, et al.

## COLUMBIA CASUALTY CO. v. SAME.

### Nos. 8616, 8622.

Circuit Court of Appeals, Fifth Circuit.

Jan. 20, 1938.

In case No. 8616:

E. B. Kurtz, Wm. L. Reed, and R. E. Sappenfield, all of Miami, Fla., for appellants.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Lloyd C. Hooks, Asst. U. S. Atty., of Miami, Fla., for Richard P. Lawson, Deputy Commissioner.

Dewey Knight and Roger Edward Davis, both of Miami, Fla., for the other appellees.

In case No. 8622:

Dewey Knight, of Miami, Fla., for appellant.

Herbert S. Phillips, U. S. Atty,, of Tampa, Fla., and Lloyd C. Hooks, Asst. U. S. Atty., of Miami, Fla., for appellee Richard P. Lawson, Deputy Commissioner.

E. B. Kurtz, W. L. Reed, R. E. Sappenfield, and Roger Edward Davis, all of Miami, Fla., for other appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The appellants, as insurance carriers for the Arundel Corporation, were held to pay compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., for the death of one Timothy Burrows. Their several suits to set aside the award failed, and these appeals followed. A single question, common to both appeals, needs decision; to wit, Was Burrows an employee within the act, so that the Deputy Commissioner had jurisdiction? This is a question on which his fact findings are not conclusive. Crowell v. Benson, 285 U.S. 22, 24, 52 S.Ct. 285, 286, 76 L.Ed. 598.

The act, so far as material, provides, section 903 (a), 33 U.S.C.A.: "Compensation shall be payable under this chapter in respect of disability or death of an employe, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of (1) a master or member of a crew of any vessel, nor any person engaged by the master to load or unload or repair any small vessel under eighteen tons net." Burrows was drowned while unloading a scow about three miles off the harbor of Miami in the Gulf Stream. The occurrence was within the admiralty jurisdiction of the United States. There is no state compensation law in Florida. We put aside the contention that the occurrence was actually more than three miles from land, and for that reason not "upon navigable waters of the United States," and we pass to the question whether Burrows was an employee under the act or excepted from it as "a member of the crew of any vessel."

The word "vessel" generally includes "any description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C.A. § 3. We attempt no definition of the crew of a vessel. Who are included was discussed recently, from different standpoints, in De Wald v. B. & O. R. Co., 4 Cir., 71 F.2d 810, and Wandtke v. Anderson, 9 Cir., 74 F.2d 381. There is implied a definite and permanent connection with the vessel, an obligation to forward her enterprise and to protect her in emergency, and a right to look to her and her earnings for wages. If she has a master, there is subjection to his commands. The nature of the work done is not determinative. Engineers and cooks as well as sailors are included. Longshoremen who load and unload a vessel under temporary local employment do not become members of the crew, nor do mechanics who similarly come aboard her to repair or clean or paint her; nor do those permanently employed upon her cease to be members of the crew because they are put at the same sort of work.

The evidence is in no conflict. Burrows was employed for the Arundel Corporation, which owned a large seagoing dredge, the Corozal, brought from New York Harbor to Miami and put to dredging the entrance to the latter harbor. She was accompanied by scows, into which the dredgings were loaded by the dredge and which were then taken in tow by a seagoing tug chartered by the Arundel Corporation and were carried to a distance of from three to five miles from land, where the dredgings were dumped. The Corozal was in command of a licensed master and was clearly a vessel with a crew within the meaning of the act, under our holding in Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670, Standard Dredging Co. v. Kibadeaux, 299 U.S. 549, 57 S.Ct. 12, 81 L. Ed. 404. With equal clearness the tug similarly in charge of a master was such a vessel. The scow herself, recently brought from Charleston, was 147 feet long, 38 feet of beam, and 13 feet deep, a 1,500 ton boat. She, also, was a vessel and engaged in transportation over navigable waters; her work being in aid of general commerce. Burrows was hired by the master of the dredge, was fed and quartered aboard her, but sign-

ed no seaman's articles, and was not shown to be an experienced sailor. But he and another were put aboard this scow, and remained there during their daily shifts of eight hours handling her lines, doing what was necessary to her navigation, and attending to dumping and cleaning her at sea. While alongside the dredge, and while aboard the dredge, they took orders from the master of the dredge. When in tow they took orders from the master of the tug. The scow could not have been navigated and unloaded without Burrows and his fellow, or some one in their places. Thus Burrows, though not an articled seaman, was permanently attached to the dredge and her attendant scow as a member of the ship's company. He was a member of her crew. When the scow was taken in tow by the tug, and he passed under command of the tug's master, upon the theory that tug and tow together constitute a vessel, he may be considered for the time being a member of this composite crew, but he was still a member of a crew of a vessel. He was employed under the title "deckhand," and the evidence is that men at his work were always so called. In Kibadeaux's Case, the injured person was not an articled seaman, and was mainly doing the work of a laborer, but by reason of his permanent employment and duties aboard a similar dredge we held him a seaman entitled to sue under section 33 of the Merchant Marine Act, 46 U.S.C.A. § 688, and as the member of the crew of a vessel excluded from the Longshoremen and Harbor Workers Act. The same conclusion must be reached here. The Deputy Commissioner was without jurisdiction. The judgments are reversed and the causes remanded, with direction to set aside his award.

Reversed.