**BOLAN v. BAY STATE DREDGING & CONTRACTING CO.**

Civil Action No. 1905.

District Court, D. Massachusetts.

Dec. 31, 1942.

Benjamin E. Gordon, of Boston, Mass., for plaintiff.

Samuel L. Bailen and Herman Snyder, both of Boston, Mass., for defendants.

Irving J. Levy, Acting Sol., of Washington, D. C., Vernon C. Stoneman, Regional Atty., and Charles H. McCue, Associate Atty., both of Boston, Mass., for L. Metcalfe Walling, Administrator of Wage and Hour Division, amicus curiae.

FORD, District Judge.

This is a motion by the defendant to dismiss the action brought by the plaintiff on his own behalf and "in behalf of all other employees similarly situated" to recover overtime and compensation claimed to be due under Section 7 of the Fair Labor Standards Act of 1938, c. 676, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., hereinafter called "The Act".

The Administrator of the Wage and Hour Division of the United States Department of Labor was allowed to inter-

vene and a brief was filed opposing the motion upon the ground referred to in the next paragraph.

The complaint was amended by the plaintiff at the suggestion of the court in order that all the essential facts surrounding the employment of the plaintiff might be set out to meet the suggestion of the Administrator and the plaintiff that the determination of the question involved here should be postponed (cf. Rule 12(d), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.) until the trial for a presentation of the essential facts. See Sparks v. England et al., 8 Cir., 113 F. 2d 579, 582; Leimer v. State Mutual Life Assurance Co., 8 Cir., 108 F.2d 302, 303, 306.

The complaint alleges that the defendant is a Massachusetts corporation engaged in interstate commerce in that it is engaged in the improvement of navigable rivers and harbors by dredging and in the reconstruction and repair of wharves, sea walls, and submarine pipe lines, all of which are used in, or in connection with, interstate commerce and are essential instrumentalities of interstate commerce; that in its operations the defendant uses dredges, cranes, mud-scows, tow-boats, launches and other floating equipment; that the plaintiff was employed as a deckhand on one of the defendant's dredges from on or about February 22, 1941, to on or about June 14, 1941, and his duties included making fast mud-scows alongside the dredge by means of lines or cables; operating deck engine to move scows when partly filled to other positions alongside the dredge; washing and scrubbing decks; repairing equipment including engines; oiling of mechanical equipment; assisting firemen in the operation of the boilers; operating spud engine to hoist spuds so that the dredge itself could be moved to other places for digging. It appeared further from the complaint that the plaintiff was employed in eight-hour shifts and usually ate two meals aboard the dredge each day for which he paid; that he was usually brought to the dredge, which at times remained stationary for a month or two, from shore each day by a launch and returned the same way; that he slept on board the dredge when he was assigned to the four a. m., shift.

The defendant in its motion to dismiss relies solely on the ground that the plain-

tiff is a seaman and Section 13(a) (3), 29 U.S.C.A. § 213(a) (3), of The Act exempts "any employee employed as a seaman".

It is obvious that the only question involved is whether the plaintiff is a seaman within the meaning of The Act.

There is a considerable range of variation in the use of the word "seaman". Congress itself has defined "seaman" in Title 8 U.S.C.A. § 173, c. 6—Immigration; Title 46 U.S.C.A. § 713, c. 18—Merchant Seamen; and Title 24 U.S.C.A. § 1, c. 1—Relief for Seamen. However, in all probability, these definitions must be confined to the context in which the term appears. Warner v. Goltra, 293 U.S. 155, 161, 55 S.Ct. 46, 79 L.Ed. 254. Congress, on the other hand, when it used the term "seamen" in The Act must be regarded as knowing the various interpretations given the term by the courts. International Stevedoring Co. v. Haverty, 272 U.S. 50, 52, 47 S.Ct. 19, 71 L.Ed. 157, where longshoremen were held to be "seamen" within the meaning of the Jones Act, 46 U.S.C.A. § 688; Warner v. Goltra, supra, where the court determined the master of a vessel a "seaman" within the meaning of the Jones Act; cf. Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901 et seq., 903.

In the case of The Buena Ventura, D. C., 243 F. 797, 799, the court stated: "the word 'seaman' undoubtedly once meant a person who could 'hand, reef and steer,' a mariner in the true sense of the word. But as the necessities of ships increased, so the word 'seaman' enlarged its meaning. * * * And a cook was explicitly held to be a seaman. * * * By the same course of reasoning an employé on a barge may be regarded as a seaman. [Disbrow v.] The Walsh Bros., D.C., 36 F. 607. Also, a cooper. * * * This court has even decided that a bartender may rank as a seaman, in The J. S. Warden, D. C., 175 F. 314". And the court in the case of Warner v. Goltra, supra, 293 U. S. at page 158, 55 S.Ct. at page 47, 79 L.Ed. 254, pointed out that there was a like range in the variation of the use of the word "crew". And it is further apparent that many courts have used the term "seamen" and "members of the crew" interchangeably.

With this background, what did Congress mean when it excepted "seamen" in The Act? Did it intend for one to be exempt that he be both a "seaman" and a "member of the crew", as the court in the case of Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991, said he would have to be, to recover under the Jones Act? That Congress well knew the distinctions made with respect to the terms is evidenced in the language of the Longshoremen's Act which superseded the decision in International Stevedoring Co. v. Haverty, supra. This latter decision tended to obscure the meaning of "seaman" by including a stevedore (not a true seaman even in an enlarged sense of the word) in "seamen". The case of Uravic v. F. Jarka Co., Inc., 282 U.S. 234, 239, 51 S.Ct. 111, 75 L.Ed. 312, rather indicates that the court did not actually give stevedores the meaning of seamen but merely extended to them the rights of seamen under the Jones Act. The Haverty case led some courts to distinguish between "seamen" and "members of the crew" (see Carumbo v. Cape Cod S. S. Co., supra, 123 F.2d at page 995; Gale v. Union Bag & Paper Corp., 5 Cir., 116 F.2d 27, 28), a distinction that has caused a good deal of confusion. In the passage of the Longshoremen's Act which provided compensation for this class of harborworkers who had been given the rights of "seamen" under the Jones Act, Congress distinguished between the protection given to different classes of maritime workers and excluded from the benefits of this Act "a master or member of a crew". 33 U.S.C.A. § 903. It is obvious from the language of the Longshoremen's Act and the legislative history of it (Cong.Rec. 69th Cong. 2d Sess. Vol. 68, pt. 5, p. 5908), reflecting the desire of "seamen" not to be included because they preferred the remedy of damages under the Jones Act, that the "seamen" who made the request to be exempt were those workers who could be regarded as "members of the crew", seamen in the true sense.

Turning to the legislative history of Section 13(a) (3) of The Act, it cannot be said that it reflects the exact meaning Congress intended to give "seamen". Congress did not define the term in The Act. Here, again, however, as at the hearings on the Longshoremen's Act, representatives of the National Maritime Union of America and Sailors' Union of the Pacific requested that "seamen" be excluded from the provisions of the bill on the ground that their group was well covered by favor-

able legislation. They preferred, with respect to wage scales and working conditions, to remain under the jurisdiction of the Maritime Commission. See Joint Hearings before Senate Committee on Education and Labor and House Committee on Labor on S. 2475 and H.R. 7200, 75th Cong. 1st. Sess. pp. 548, 549, 1216, 1217. Supreme Court Justice Black—then Senator—stated, in explaining the exemption Section 13(a) (3), that "* * * it was the policy of the committee, in cases where regulation of hours and wages are given to other governmental agencies, to write the bill in such a way as not to conflict with such regulation. That action was taken with reference to maritime workers". Cong.Rec. Vol. 81, p. 7875.

There does not seem to be much doubt that the "seamen" who requested exemption from the provisions of the Fair Labor Standards Act were "members of the crew", a group similar to that requesting exemption from the Longshoremen's Act. Although Justice Black described those intended to be exempted as "maritime workers", I do not believe that he referred to such maritime workers as longshoremen, laborers, mechanics, painters, or carpenters who could be regarded as maritime workers and "seamen" under the definition of the terms in the Carumbo case, 123 F.2d at page 995, but yet were not "members of the crew". I think it is evident, without question, that the type of workers Justice Black referred to, and which were to be exempt, were "seamen" who were "members of the crew". Whether "members of the crew" (ship's company) includes all officers of the ship, including the master, will be a problem of another case but it does seem that unless the context in which the term appears excluded the latter, they should be regarded as "members of the crew". See United States v. Winn, Fed.Cas. No. 16,740. Parenthetically, it seems, on the whole, that it should be unnecessary to differentiate between "seamen" and "members of the crew", inasmuch as the Longshoremen's Act and the State Compensation Acts provide compensation for all harborworkers (called "seamen" since the Haverty case) on whatever side of the line they fall—maritime or land workers. If we revert to the original meaning of "seamen" —in the broad sense—(cf. The Buena Ventura, supra) we would have little difficulty in construing "seamen" when used by Congress. It would have its plain ordinary meaning—members of the crew—unless the context in which it appears indicates otherwise.

This circuit stated in Carumbo v. Cape Cod S. S. Co., supra, 123 F.2d at page 994, in determining whether a plaintiff could recover under the Jones Act, 46 U.S.C.A. § 688: " 'Seamen' is broad enough to cover both one who is a 'member of a crew' and one who is not a 'member of a crew'. * * * To be a 'seaman', however, it is not required that the employee's work be in aid of navigation or that he be on board primarily to aid in navigation". After reviewing the cases the court stated: "As a result of the cases, we feel constrained to hold that one who does any sort of work aboard a ship in navigation is a 'seaman' within the meaning of the Jones Act". The court stated further after discussing the Longshoremen's Act, 33 U. S.C.A. § 901 et seq., which makes provision for compensation for harborworkers who, engaged in maritime employment, have been classed as "seamen" (International Stevedoring Co. v. Haverty, supra) but are not "members of the crew", that the plaintiff must be a "seaman" and "a member of the crew" to recover under the Jones Act. In the Carumbo case the court defines navigation. However, it does not appear that it defines navigation in all its phases. The dredge here was a vessel and in navigation. Ellis v. United States, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047, 11 Ann.Cas. 589; Charles Barnes Co. v. One Dredge Boat, 6 Cir., 169 F. 895; Saylor v. Taylor, 4 Cir., 77 F. 476; The Alabama, D. C., 19 F. 544, affirmed C. C., 22 F. 449.

In a long line of cases it has been held that workmen on barges and dredges having no motive power and engaged in deepening navigable waters, work incidental to navigation, were "seamen" and entitled to maintain liens for their services. Charles Barnes Co. v. One Dredge Boat, supra, (see discussion and résumé of cases dealing with "vessels" subject to admiralty jurisdiction); The J. S. Warden, supra (bartender on vessel entitled to lien as seaman on ground that such services were in furtherance of the purpose of the voyage); The Hurricane, 3 Cir., 2 F.2d 70; McRae v. Bowers Dredging Co., 9 Cir., 86 F. 344; Saylor v. Taylor, supra; The Atlantic, D. C., 53 F. 607; The Alabama, supra; and see Ellis v.

United States, supra, where the Supreme Court held that scows and floating dredges were vessels and that a deckhand on such a dredge was a "seaman". These cases do not distinguish between a "seaman" and a "member of the crew". The term had not been so blurred by court decisions at the time these cases were decided. There seems little doubt that the court in deciding these cases regarded cooks, engineers, deckhands, and similar employees as "members of the crew" and, consequently, "seamen". Cf. A. L. Mechling Barge Line v. Bassett, 7 Cir., 119 F.2d 995, 997. These cases hold that any person furthering the purpose of the voyage together with those engaged in the navigation of the ship are "seamen". The J. S. Warden, supra.

Many cases have laid down the requisites that determine a "member of the crew".

In the case of Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190, 193, a case arising under the Longshoremen's Act, the court held a deckhand who was not an articled or experienced sailor, who remained aboard a scow during daily shifts of eight hours handling her lines and who was permanently attached to the dredge was a "member of the crew", basing its decision upon Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670, 673, certiorari denied 299 U.S. 549, 57 S.Ct. 12, 81 L.Ed. 404; Butler v. Ellis, 4 Cir., 45 F.2d 951.

The case of A. L. Mechling Barge Line v. Bassett, supra, a case arising under the Longshoremen's Act, held a cook sleeping on board a tow-boat and engaged in river navigation was a "member of the crew". [119 F.2d 999.] Cf. Puget Sound Freight Lines v. Marshall, 9 Cir., 125 F.2d 876, 879.

In the Carumbo case, 123 F.2d at page 995, the court laid down three requirements of a "member of the crew": (1) Vessel in navigation; (2) on board to aid in navigation; (3) more or less permanent connection. These facts present a factual question, as each case does, and it appears that these requirements are satisfied by the circumstances surrounding the plaintiff's connection with the dredge on which he was employed. The dredge was in navigation—it was engaged in deepening a navigable channel (cf. Kibadeaux case); the plaintiff's duties were performed upon the dredge when the latter was performing its work in aid of navigation. His handling of lines and other duties were manifestly important for the safety, maintenance, and operation of the dredge. He controlled the vessel's movements by operating the spud engine. It is clearly apparent he was on board in aid of navigation. Lastly, he was employed by the vessel itself; he had a permanent connection with it. True, he was employed by the day and for the most part ate and slept ashore, but these factors do not necessarily prevent him from being a "member of the crew". Carumbo case, supra, 123 F. 2d at pages 995, 996, and cases cited.

Gale v. Union Bag & Paper Corp., supra, certiorari denied 313 U.S. 559, 61 S. Ct. 837, 85 L.Ed. 1519, was a case which arose under The Act. It concerned a suit to recover wages for overtime. The court held that barge tenders on barges lacking motive power and steering gear are excluded from the benefits of The Act. The court made no distinction here between "seamen" and "members of the crew" and relied on the Haverty case to determine that the plaintiff was a seaman. However, it seems that the facts of this case would warrant a finding that the plaintiff was a "member of the crew" and, consequently, a "seaman". Cf. Lowrimoore v. Union Bag & Paper Corp., D.C., 30 F. Supp. 647.

The plaintiff argues The Act is remedial legislation and should be given a liberal construction in order that the plaintiff might partake of its benefits. Ordinarily such a principle should be applied to remedial legislation, but it would hardly justify an application of this principle to include those who expressly requested to be excluded.

It may be that Congress did not intend this type of "seaman" to be exempted; in other words, that Congress only intended to exclude "seamen" who could be found to be such in the narrow sense of the term, i. e., mariners who could "hand, reef and steer". The Buena Ventura, supra. I do not believe this to be so. I think Congress meant "seamen" in Section 13(a) (3) to be a "seaman" in the broad sense of the term which has been discussed above, and the plaintiff is well within the broad meaning. Cf. The Buena Ventura, supra. I may be wrong in this, but until Congress makes it plain that it was its intent to exclude "seamen" in the broad sense of the term, or limit its meaning somewhere in between the broad and narrow meanings, as laid down by the

courts, or expressly exclude this very type of seaman as it did when exempting fishermen (Section 13(a) (5) who are undeniably seamen (generally unarticled, 46 U.S.C.A. § 566), I have no other recourse than to follow the plain language of The Act and am forced to the conclusion reached here. To do otherwise, would seem to me an example of judicial legislation.

■ I have recognized that the Administrator of the Wage and Hour Division of the Department of Labor has issued an interpretive bulletin which the plaintiffs contend takes a position contrary to what I have taken here. I agree that this interpretation is entitled to great weight. There is language which would seem to indicate that employees engaged in dredging operations were not "seamen" within the meaning of The Act and that the Administrator would reach a conclusion contrary to the one reached here. If this is so, I must disagree.

The motion to dismiss is granted without costs.