**DAFFIN et al. v. PAPE et al.**

No. 12325.

United States Court of Appeals
Fifth Circuit.

Nov. 12, 1948.

McCORD, Circuit Judge, dissenting.

———◆———

William G. Caffey, of Mobile, Ala., for appellants.

T. E. Twitty, Richard H. Inge and John H. Tappan, all of Mobile, Ala., for appellees.

Before McCORD and LEE, Circuit Judges, and MIZE, District Judge.

LEE, Circuit Judge.

The widow and children of Rufus Daffin filed a claim for compensation under provisions of the Longshoremen's and Harbor Wrokers' Compensation Act, 33 U.S.C.A. § 901 et seq., after Daffin died of burns received from an explosion aboard W. O. Pape's yacht Vigilant, where he was working. The deputy commissioner awarded compensation. Pape and his insurance carriers filed a libel in the district court,

praying that the order be set aside and its enforcement enjoined. After a hearing, the court below entered a decree enjoining the enforcement of the award. This appeal followed.

Daffin, at the time of his injury and death, was, and for some time prior thereto had been, in the employ of W. O. Pape; he was carried on the payroll of a radio station owned and operated by Pape. The Vigilant was used primarily in connection with the station for entertaining advertisers and prospective advertisers and generally building good will for the broadcasting business. Daffin served as handyman and porter around Pape's office and at his home. Though he was not listed as crew, yet he devoted a large portion of his time—according to Pape at least 50%, according to the yacht captain at least 90%—to the yacht, painting, cleaning, storing supplies, and preparing the yacht for sea service when it was in port. When it sailed, which was two or three times weekly, he was carried along; he served drinks to guests, aided in cooking and general work, and relieved the captain at the helm.

The deputy commissioner determined that Daffin was a porter and handyman, and that his duties aboard the yacht were incidental to his employment; hence that he was eligible for benefits under the Longshoremen's and Harbor Workers' Compensation Act. The district court, disagreeing with this determination, held Daffin a seaman, a member of the yacht's crew, and, as such, excluded from the coverage of the act. The basic question presented on this appeal is whether the district court committed error in upsetting the compensation award.

The appellants contend that the deputy commissioner's finding that Daffin was an employee within the scope of the act was a determination of a question of fact and that, since under the act authority for such a determination is vested solely in the deputy commissioner, his action was binding upon the district court. Appellees, on the contrary, urge that the award stemmed from a determination of a question of law and that it was, therefore, properly subject to the district court's power of re-

view. Appellants rely mainly on South Chicago Coal & Dock Co. et al. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; appellees, on Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 749, 88 L.Ed. 931. In the latter case, after pointing out that § 19(a) of the act gives ·the deputy commissioner "full power and authority to hear and determine all questions in respect of" claims for compensation and that § 21(b) gives the federal district courts power to suspend or set aside in whole or in part the compensation awards "not in accordance with law", the court, referring to the Bassett case, said: "In considering those provisions of the Act in the Bassett case we held that the District Court was not warranted in setting aside such ·an order because the court would weigh or appraise the evidence differently. The duty of the District Court, we said, was to give the award effect, 'if there was evidence to support it.' 309 U.S. at page 258, 60 S.Ct. at page 548, 84 L.Ed. 732. And we stated that the findings of the Deputy Commissioner were conclusive even though the evidence permitted conflicting inferences. Id., 309 U.S. at page 260, 60 S.Ct. at page 549. * * * Thus it is that the ·judicial review conferred by § 21(b) does not give authority to the courts to set aside awards because they are deemed to be against the weight of the evidence. More is required. The error must be one of law, such as the misconstruction of a term of the Act."

The court then concluded that, where the facts as to the duties performed and services rendered are not in dispute and lead unerringly to the view that the injured employee was a member of the crew of the vessel and not a longshoreman as construed by the deputy commissioner, the error was one of law, a misconstruction of a term of the act. In reaching this conclusion, the court referred to the importance of the exclusion, ·under the act, of the master and members of a crew of a vessel, pointing out that the liability of the employer, as fixed in the act, is singular and specific, and those who are not covered by the act, master and crew, but who are protected by maritime law, enjoy many broader and more liberal benefits. These, the court said, "are basic rights," and "where Congress has provided that those basic rights shall not be withheld from a class or classes of maritime 'employees it is our duty on judicial review to respect the command and not permit the exemption to be narrowed whether by administrative construction or otherwise."

█ We think it clear from the Warner Co. case that, since the facts having to do with the services Daffin was performing on the yacht at the time of injury are undisputed, the question whether he was a member of the crew, excluded by the act, or an employee, within the act, is a question of law, reviewable by the court. The following facts and factual findings appear in the deputy commissioner's report as amplified by the evidence: Daffin sailed with the yacht on every trip; he performed duties essential to the purpose and success of the voyage; and, between trips, while the yacht was in port, he labored to prepare, her for the next voyage. For several days prior to the accident, he had worked to put the yacht in readiness for a trip which was to have started the day after the accident. A few minutes before the accident, he had been checking the engines and filling the gas tanks. The electric power plant was running, and he went into the motor room to cut it off. He pulled the switch, and there was an explosion. From the burns he received, he died. The yacht, at the time, was in port, yet it nevertheless must be considered to have been in navigation, for it remained in readiness for another voyage. Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991.

The statement of Judge Swan, speaking for the second Circuit Court of Appeals, in Long Island R. Co. v. Lowe, 145 F.2d 516, at page 518, is pertinent to appellants' contention here. He said: "The appellants, however, urge that the character of his employment cannot be properly determined unless his work, during the entire period of his employment be taken into consideration, and that it was on this basis the Deputy Commissioner reached his conclusion that the decedent

was a longshoreman rather than a member of the crew. In this we think error in a matter of law was committed. The employee's duties on the day of the accident are the critical facts which should determine his status as a member of the tug's crew. It is true that if he had been called aboard for a single act of service, he might not become a member of the crew. But on the days when his employer assigned him to serve as 'mate' of the vessel, we hold that he was a crew member, although he might cease to be one on days when he was assigned for other duties." See to the same effect Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190; Osland v. Star Fish & Oyster Co., 5 Cir., 107 F.2d 113.

█ Daffin was on board the yacht to aid in her navigation; his labors contributed to the accomplishment of the main objectives toward which the vessel was engaged. That he had not signed articles and did not eat and sleep aboard the vessel when it was in port, was of no consequence.[1]

█ The duties Daffin was performing when he was injured[2] were duties ordinarily performed by a member of the crew, and we think, as did the judge below, that he must be considered, in law, to have been a member of the Vigilant's crew.

The judgment appealed from is affirmed.

McCORD, Circuit Judge (dissenting).

I believe my learned brothers have erred in holding, as a matter of law, that the deceased Daffin was a member of the yacht crew at the time he received his fatal injury. Their view is predicated upon the assumption that the facts as to the services performed by Daffin for his employer are without dispute. Although the actual duties which Daffin was performing in servicing the yacht at the time of his injury

were clearly shown, it nevertheless becomes patent that the ultimate and disputed question of fact involved was whether those duties were merely incidental to the general character of his employment as porter and "handy-man" for Pape, or whether they were discharged pursuant to his alleged status as a crew member of the yacht, Vigilant. South Chicago Coal & Dock Co. et al. v. Bassett, 309 U.S. 251, 260, 60 S.Ct. 544, 84 L.Ed. 732; Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931; Henderson v. Jones et al., 5 Cir., 110 F.2d 952, 953, 954; Puget Sound Freight Lines v. Marshall, 9 Cir., 125 F.2d 876, 878.

At the hearing before the Deputy Commissioner, it was shown that Daffin, with the exception of about a year spent in the service during the war, had worked for W. O. Pape since the year 1935; that he was originally employed as a porter or handyman at his employer's radio broadcasting station WALA in Mobile, approximately three years before Pape ever owned a yacht and before Daffin was ever required to perform any yacht maintenance duties; that the yacht in question had been in a navigable condition only two or three months before Daffin received his fatal injuries thereon; that at the time of his injury he had not signed any articles as a member of the yacht crew, and did not sleep or eat on board the vessel; that throughout the entire period of his employment by Pape he was carried on the payroll of radio station WALA, listed as a laborer or handy-man; that the yacht Vigilant was not a seagoing vessel, but only a pleasure craft owned and operated by Pape almost exclusively to entertain regular and prospective advertisers for his radio station, and generally to build up good will for his broadcasting business. It was further shown that during the entire period of his employment Daffin was vari-

---

[1] The Buena Ventura, D.C., 243 F. 797; The Bound Brook, D.C., 146 F. 160; The General Geo. Goethals, D.C., 27 F. 2d 183; The Sea Lark, D.C., 14 F.2d 201; The J. S. Warden, D.C., 175 F. 314; Dunham Towing & Wrecking Co. v. Bassett, D.C., 36 F.Supp. 527; Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190; Bolan v. Bay State Dredging & Contracting Co., D.C., 48 F.Supp. 266.

[2] " * * * habitual performance of other and different duties on land cannot alter the fact that at the time of the accident he was riding in a boat on a navigable river, and it is in connection with that clearly maritime activity that the award was here made." Parker v. Motor Boat Sales, 314 U.S. 244, 247, 62 S. Ct. 221, 223, 86 L.Ed. 184.

ously engaged as a (1) porter at the broadcasting station, (2) chauffeur, (3) yardman, (4) waiter, (5) personal valet, and (6) general handy-man to his employer. In fact, it appears clearly from the evidence that Daffin, while employed in his general capacity as handyman to Pape, was used in as many different things as pepper and salt. In any event, he was not normally under the direction, supervision, or control of the master of the yacht,[1] but was at all times subject to Pape's orders, and received instructions "more or less in everything he would do". Even when Daffin worked on his yacht Pape admitted there was no contemplated change of his status from porter and handy-man to crew member of the vessel. His pay remained the same, and he continued to work, live, sleep, and eat ashore.

I am of opinion substantial evidence supports the finding of the Deputy Commissioner that at the time of his injury Daffin was not a member of the yacht crew. Moreover, since this disputed factual issue has already been resolved in appellants' favor, with ample evidence to support the view taken by the Deputy Commissioner, I do not believe the district court was warranted in overturning his findings in this regard. South Chicago Coal & Dock Co., et al. v. Bassett, 309 U.S. 251, 257, 60 S.Ct. 544, 84 L.Ed. 732; Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931; Wm. Spencer & Son Corp. v. Lowe, 2 Cir., 152 F.2d 847; Schantz v. American Dredging Co., 3 Cir., 138 F.2d 534, 536.[2]

The case of Norton v. Warner Co., 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931, strongly relied upon by the majority, is not applicable or controlling in favor of their decision, as the facts in that case render it clearly distinguishable from the facts here.

In that case, a bargeman injured while employed under a union contract with a navigation company, was held properly excluded, as a matter of law, from any benefits under the Longshoremen's and Harbor Workers' Compensation Act, because the evidence showed conclusively that he was master of the barge on which he was injured. In fact, "at the time of the injury he was the sole person aboard or employed upon the barge." Norton v. Warner Co., 321 U.S. 565, 568, 64 S.Ct. 747. He lived, ate, and slept on the barge at all times. His duties consisted of taking general care of the barge to which he alone was assigned, and those duties required his continuous presence on board. Moreover, it was expressly stated in his contract of employment that compensation was "for all work performed by Bargeman in the operation of his own vessel": He had no duties in connection with the loading or unloading of supplies and no shore duties whatever. He was at all times subject to the orders of the company's marine superintendent, except when in tow, at which time he was subject only to the control of the tugboat captain. It becomes manifest, in view of the wide factual gap between the Warner case and this case, that it does not support the holding of the majority that the question here involved is solely one of law. The evidence in the Warner case was open to no other reasonable inference but that Rusin, as master and sole person on board the barge at the time of his injury, was expressly excluded from the benefits of the Act. Here, we are confronted with a case involving a disputed factual issue.

The majority opinion seems to hold that Daffin, by merely performing temporary duty on board the yacht at the time of his injury, thereby instantaneously relin-

---

[1] In this connection, the master of the yacht testified:

"Q. What percentage of time would you say he was out on the boat while being navigated? A. I don't suppose it would be an average of twice a week, over 15% of his time or 20%. Some weeks we were not out as often as others."

[2] As was stated by Chief Justice Hughes, speaking for the Supreme Court in the case of South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 257, 258, 60 S.Ct. 544, 548: " * * * So far as the decision that this employee, who was at work on this vessel in navigable waters when he sustained his injuries, was or was not 'a member of a crew' turns on questions of fact, the authority to determine such questions has been confided by Congress to the deputy commissioner * * * his finding, if there was evidence to support it, was conclusive * * *."

quished, as a matter of law, the permanent character of his employment as a porter and handy-man tô his employer, and stepped into his assigned role as a member of the yacht crew. I am constrained to believe the majority and the district court, in overriding the Deputy Commissioner's contrary determination, are assuming fact finding prerogatives not vested by Congress in the courts.

I respectfully dissent.