**WILKES et al. v. MISSISSIPPI RIVER SAND & GRAVEL CO.**

**No. 11548.**

United States Court of Appeals
Sixth Circuit.

March 3, 1953.

384

Wils Davis and Earl P. Davis, Memphis, Tenn. (Von Mayes and Fred L. Henley, Caruthersville, Mo.; Davis & Davis, Memphis, Tenn., on the brief), for appellants.

James M. Reeves, Caruthersville, Mo., L. E. Gwinn, Memphis, Tenn. (Ward & Reeves, Caruthersville, Mo., on the brief), for appellee.

Before SIMONS, Chief Judge, and MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

These two appeals from the dismissal of libels in Admiralty, which were consolidated for trial in the district court, have been heard together. The libelant administrators brought actions for damages under the Jones Act, Title 46 U.S.C.A. § 688, for the deaths of Paul D. Godsey, Jr., and Edward A. Resch (their respective decedents) caused by the negligence of respondent while decedents were employed on barges, or a dredge boat, operated by it on the Mississippi River near Helena, Arkansas.

The ground upon which respondent moved to dismiss the libels was that decedents were not members of the crew of any barge or boat operated by respondent, but were laborers employed by the corporation in the loading of gravel as it was pumped from the Mississippi River bed upon barges operated by the respondent-appellee, and that libelants' rights of action were within the purview of and governed exclusively by the Longshoremen's and Harbor Workers' Compensation Act, Title 33 U.S.C.A. § 901 et seq. After receiving evidence pertaining to the operations of the respondent and the work performed by decedents, the United States District Court sustained the motions to dismiss.

For some time before their tragic deaths, Paul D. Godsey, Jr., and Edward A. Resch had been in the employ of appellee, Mississippi River Sand & Gravel Company, which was engaged in taking sand and gravel from the bed of the Mississippi River and loading it upon gravel barges supplied by the United States Engineers. In performing this operation, appellee used a dredge boat, barges, and a towboat, none of such vessels being self-propelled except the towboat.

On October 30, 1950, while these vessels were being operated by appellee at a point about mid-channel of the Mississippi River and approximately twenty miles south of Helena, Arkansas, there was an explosion which destroyed the dredge, barges and towboat and killed Godsey and Resch. The dredge boat had been equipped with machinery for pumping sand and gravel from the bed of the river. By means of a conveyor belt, the sand and gravel was loaded or deposited on the deck of a barge, tied alongside the dredge boat. When the loading was completed, the barge would be towed to the bank of the river by the corporation's towboat and there anchored for further movement by the United States Engineers. The towboat would then pick up at this anchorage an empty barge and return it to the dredge boat for loading. The procedure of towing the loaded barge to the bank and returning with an empty barge to the dredge would be repeated from time to time. The United States Engineers would, in turn, tow the loaded barges away from the river bank, empty the gravel, and return the barges. By this method, a supply of empty barges was kept anchored near the dredging location.

No conflict appears from the record in respect of the duties performed by the deceased employees. Specifically, these duties consisted exclusively of trimming, spreading, or leveling, with a shovel or by other means, the gravel on the barge as it was deposited there by the conveyor belt. The duties of the two men were identical, one of them working on a night shift and the other on a day shift. Their work on the barge consumed their entire time, and was to accomplish a two-fold purpose: (1) to distribute the gravel evenly over the entire barge so that it would not form a pyramid or become cone-shaped as it came off the conveyor belt and thereby cause the barge to list dangerously; and (2) to assure an accurate measurement of the gravel for which respondent-appellee, under its contract with the Government, was compensated by the cubic yard.

Both decedents lived on the dredge boat, eating and sleeping there, along with all the rest of the men employed by appellee in its operations. The decedents were not required to live aboard, but were not charged anything for their quarters or board—a manifest inducement to do so.

The United States District Court found specifically that neither of the decedents "had any duty to perform for respondent having to do with navigation or aiding in

the navigation of any of the vessels used by respondent in its operations and neither was a master or member of the crew of any vessel used by the respondents." The court found further: "The actual duties of decedents were similar and neither had any duties to perform on the dredge or barges which primarily or naturally aided in navigation, and neither was anything more than a laborer employed to remove gravel from the bed of the Mississippi River and transfer it to the barges operated by respondent."

The conclusion of the District Judge was that decedents were not "members of a crew of any vessel" as used in the Longshoremen's and Harbor Workers' Act, nor were they "seamen" as used in the Jones Act, and therefore the claims for damages for their deaths were not within the jurisdiction of the district court under the Jones Act, but were embraced within the coverage of the Longshoremen's and Harbor Workers' Compensation Act.

In the case of the Administrator of Godsey, there is an additional matter to be considered. Following the explosion, which caused the fatal injuries to both Godsey and Resch, the appellee-employer gave proper notice of the accident required by the commissioner under the Longshoremen's Act; and Mrs. Vivian Fay Godsey, widow of Paul D. Godsey, Jr. filed her claim for compensation with the commissioner under the Longshoremen's Act. Her claim for compensation was filed prior to the bringing of the suit in Admiralty. Subsequently, while this suit by the administrator was pending in Admiralty and before the commissioner had heard or acted on her claim, she moved to dismiss her claim under the Longshoremen's Act before the commissioner. He refused to allow her to dismiss. Thereafter, the commissioner rendered judgment, holding the claim compensable under the Longshoremen's Act. The widow filed her protest against such judgment and rejected its benefits. There has been no claim filed under the Longshoremen's Act on behalf of the dependents of the decedent Edward A. Resch. The compensation award and findings of the commissioner in the Godsey claim were filed by the appellee as part of its motion to dismiss the libel.

The district court held that the claim of Godsey, having been heard by the compensation commission and determined to be within the purview of the Longshoremen's and Harbor Workers' Act, was *res judicata* and that the court was, therefore, without jurisdiction. It held further however, that if the court should be in error in holding that it lacked jurisdiction over the Godsey claim, the case should still be dismissed for the reason that the proof showed that Godsey was not a "member of the crew.".

■ The fact that Godsey's widow at first thought her claim was governed by the Longshoremen's Act would not, we think, preclude her from later deciding that she had erred in choosing her remedy, or from moving to dismiss her claim and refusing to accept the benefits awarded. She requested a dismissal of her claim before the commission had acted. The test seems to be whether or not any compensation benefits have, in fact, been accepted. See Marceau v. Great Lakes Transit Corp., 2 Cir., 146 F.2d 416, and Kibadeux v. Standard Dredging Co., 5 Cir., 81 F.2d 670. That Congress anticipated the risk of employees choosing the wrong remedy is shown by their enactment of section 913(d) of Title 33 U.S.C.A. See Norton v. Warner Co., 321 U.S. 565, 569, 64 S.Ct. 747, 88 L.Ed. 931, and Ayers v. Parker, D.C., 15 F.Supp. 447, 451.

■ We conclude, therefore, that the Godsey claim is not *res judicata* by reason of the proceedings under the Longshoremen's Act before the Deputy Commissioner. His resultant decision is not deemed to be binding.

Upon analysis, the issue presented for decision is whether these cases are governed by the Longshoremen's and Harbor Workers' Act, Title 33 U.S.C.A. § 901 et seq., or by the Jones Act, Title 46 U.S.C.A. § 688. If, at the time of the explosion, decedents were members of the crew of appellee's vessel, the libel actions brought here fall within the coverage of the Jones Act.

The question of whether a certain claimant is a "master or member of a crew" is primarily a question of fact; but the Supreme Court has said that the "word 'crew' does not have an absolutely unvarying legal significance." South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 257, 60 S.Ct. 544, 547, 84 L.Ed. 732.

While this court is bound by the findings of fact of the District Judge, if they are supported by substantial evidence and are not clearly erroneous, it would seem that the principles of the Bassett case permit us to attach a different legal interpretation to the word "crew" from that applied by the District Judge. We think this view is supported by Warner Co. v. Norton, 3 Cir., 137 F. 2d 57, affirmed by the Supreme Court, 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931. At pages 58 and 59 of 137 F.2d of the opinion, the Court of Appeals said: "While the question as to whether a particular claimant is 'a master or member of a crew' of a vessel and therefore excluded from the Compensation Act is one of fact, it is necessarily an ultimate conclusion to be derived from an application of the statute to the basic findings of fact. As such, it is open to court review for a determination of its validity on the basis of the supportable facts as found by the Commissioner. In short, a Commissioner's conclusion that one is or is not 'a master or member of a crew' is not binding upon a reviewing court if the basic facts competently found by the Commissioner rightly call for a different conclusion." In Schantz v. American Dredging Co., 3 Cir., 138 F.2d 534, 536, after quoting from Warner Co. v. Norton, supra, Judge Goodrich said: "The same rule will apply to findings of judge or jury when the plaintiff's effort is to escape the Longshoremen's Act, rather than to get under it, and the litigation is a law suit instead of an application for compensation."

It would appear that, in the instant case, the District Judge placed too narrow a meaning upon the word "crew," and by so doing incorrectly restricted these decedent employees, through their personal representatives, to the remedies afforded by the Longshoremen's Act, thereby denying them their appropriate remedy under the Jones Act. See Norton v. Warner Co., 321 U.S. 565, 573, 64 S.Ct. 747, 88 L.Ed. 931, citing Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190; Loverich v. Warner Co., 3 Cir., 118 F.2d 690; and Cantey v. McClain Line, D.C., 32 F.Supp. 1023, Id., 2 Cir., 114 F.2d 1017, reversed 312 U.S. 667, 61 S.Ct. 829, 85 L.Ed. 1111.

It must constantly be borne in mind that these suits were brought under the Jones Act and the facts found must be viewed in the light of the requirements of that remedial statute, the legislative history of which discloses the Congressional intent that it should be construed liberally. See Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991, 995, and cases there cited. On page 995 of 123 F.2d, the Carumbo opinion, the court said: "The process of liberal construction of the Jones Act cannot now be ignored because Congress has seen fit to pass the Longshoremen's Act." By placing a restrictive meaning upon the phrase "member of a crew," as applied to the facts in these cases, the district court has in effect interpreted the facts as if the claims had their origin under the Longshoremen's Act and, by presumption, has held the claims to come within the provisions of that Act.

After quoting in his succinct, clear-cut opinion from the writings in Carumbo v. Cape Cod S. S. Co., supra; Warner Co. v. Norton, supra; and South Chicago Coal & Dry Dock Co. v. Bassett, supra, the District Judge said: "Now, from these cases and others, the important descriptive word as used is the word 'primarily.' In other words, if the duties of the deceased persons in this case were 'primarily' and naturally concerned with the loading of the barges, they to the Court's mind are laborers, and are to be regarded as being in the sort of work as is engaged in by longshoremen or harbor workers." He added: "Under the proof they performed no substantial duties as are usually performed by seamen or 'members of the crew.' It cannot be said that they had any duties on the vessel which 'primarily' and naturally aided in navigation. If so, it was only in a very indirect way."

From our own analysis of the uncontroverted facts, we think that this was

not the test to be applied in determining the status of the decedents in an action brought under the Jones Act. It would seem that the several tests under the Jones Act should be as derived from the cases of South Chicago v. Bassett, supra; Norton v. Warner Co., supra; Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190; A. L. Mechling Barge Line v. Bassett, 7 Cir., 119 F.2d 995; Carumbo v. Cape Cod S. S. Co., supra; and as set forth in Rackus v. Moore-McCormack Lines, Inc., D.C., 85 F.Supp. 185, namely: (1) that the vessel be in navigation; (2) that there be more or less permanent connection with the vessel; and (3) that the worker be aboard primarily to aid in navigation.

Applying these requirements to the instant facts, it appears that only the third requirement (that the worker be aboard primarily to aid in navigation) is the source of confusion. A review of the cases supports our conclusion that "aiding in navigation" is not confined to those who can "hand, reef and steer," but applies to all whose duties contribute to the operation and welfare of the vessel. See Norton v. Warner Co., supra [citing Judge Hough's opinion in The Buena Ventura, D.C., 243 F. 797]. It has been held that a person is aiding in navigation, though he happens to be a cook. A. L. Mechling Barge Line v. Bassett, supra. See, especially, Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670, certiorari denied 299 U.S. 549, 57 S.Ct. 12, 81 L.Ed. 404.

The opinion in Taylor v. McManigal, 6 Cir., 89 F.2d 583, does not conflict with our views herein expressed. In that case, the ship was not in navigation. The injured mechanic merely expected to become a member of the crew when chosen and when the vessel was ready to sail. Likewise, Antus v. Interocean S. S. Co., 6 Cir., 108 F.2d 185, has no bearing here.

The appellee contends that, though the facilities for eating and sleeping on the dredge boat were furnished to the decedents free of charge, it was optional with them whether or not they would take advantage of such facilities. Little merit inheres in this argument. Whether their permanent connection with the vessel was voluntary or otherwise, the free board and lodging was in reality extra compensation for their services. If they were not actually required by their employer to live on the vessel, their residence aboard was undoubtedly approved and encouraged. It cannot fairly be said that the employer did not benefit therefrom.

In our judgment, an employer who hires men to work on the water on vessels engaged in navigation and permits them to have such a permanent connection with the vessel as to expose them to the same hazards of marine service as those shared by all aboard should not be permitted, by merely restricting their duties or by adopting particular nomenclature as descriptive of their tasks, to limit his liability to such employees, in the event of disability or death alleged to have been caused by the negligence of the employer, to the extent prescribed by the Longshoremen's Act. Compare Seas Shipping Co., Inc., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, which, though not a case involving the employee-employer relationship required by the Jones Act, has bearing upon the point.

In our opinion, an employee, engaged in maritime work the nature of which meets the three requirements heretofore described, who is injured in the course of his employment as a result of the negligence of his employer, may bring an action under the Jones Act. The libelants' decedents met the required standards.

Accordingly, the judgments are reversed; and the causes are remanded to the district court for further proceedings in conformity with this opinion.

MILLER, Circuit Judge (dissenting).

I am of the opinion that the judgment should be affirmed on the authority of South Chicago Coal and Dock Company v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Swanson v. Marra Brothers, Inc., 328 U.S. 1, 6–7, 66 S.Ct. 869, 90 L.Ed. 1045; See also: Radcliff Gravel Co. v. Henderson, 5 Cir., 138 F.2d 549, certiorari denied 321 U.S. 782, 64 S.Ct. 638, 88 L.Ed. 1074; De Wald v. Baltimore & Ohio R. Co., 4 Cir., 71 F.2d 810, certiorari denied 293 U.S. 581, 55 S.Ct. 94, 79 L.Ed. 678; Puget Sound Freight Lines v. Marshall, 9 Cir., 125 F.2d 876; Wm. Spencer & Son Corp. v. Lowe, 2

Cir., 152 F.2d 847, certiorari denied 328 U.S. 837, 66 S.Ct. 1012, 90 L.Ed. 1613; Rowen v. Brown, D.C.W.D.Mich., 61 F.Supp. 858, 861; Rackus v. Moore-McCormack Lines, Inc., D.C.E.D.Pa., 85 F.Supp. 185; Gulf Oil Corp. v. McManigal, D.C.N.D.W.Va., 49 F.Supp. 75.